OPINION BY KUNSELMAN, J.:
Robert Rostro Davis, III, appeals from the judgment of sentence after his conviction on three drug-related charges. Because the Commonwealth's search of Davis' automobile unreasonably violated his constitutional right of privacy, we reverse.
The facts of this case, which the arresting police officer-Thomas Byrne-related at the suppression hearing, are uncontradicted.
At approximately 1:25 a.m. on March 1, 2017, Officer Byrne and his partner responded to a reported car accident in a residential neighborhood, on the southeastern edge of Montgomery County. When they arrived, Philadelphia police were already on the scene. N.T.[1] at 6. Philadelphia's officers quickly left, and nothing of record reflects that they believed crime was afoot. Id. at 15. Additionally, there was no evidence of any damage to property or personal injuries; thus, the report of a car accident was mistaken. Instead, Davis had parked his vehicle on the sidewalk without trespassing on anyone's private property or obstructing the roadway. Id. at 5. Davis, whose door was ajar, "looked like he was passed out" in the driver's seat. Id. at 5-6. The officer attempted to wake him first by yelling and then by rubbing his sternum.
Davis gradually regained his senses and informed the officer that he had driven there from a nearby friend's house. A paramedic team arrived, interrupting the investigation. They examined Davis for five to ten minutes. He declined treatment, so emergency medical services (EMS) departed without indicating that anything was amiss with Davis or that he could not safely drive. Id. at 15.
Undeterred, the policeman instructed Davis to step outside the vehicle and place his hands upon the car. Davis complied; the officer frisked him but found "nothing." Id. at 16. He then handcuffed Davis and locked him in the back of the police car. The officer did not have Davis perform a sobriety test, nor was there evidence of bloodshot, glassy eyes or a smell of alcohol or drugs about Davis or his car. Id. at 23. The officer admitted on cross examination that he "wasn't going the route of DUI." Id. at 24.
*457 After locking Davis in his cruiser, the officer then returned to Davis' vehicle and saw a cigarette box in the compartment of the open, driver-side door. The cigarette container was closed, so the officer could not see its contents. When asked what the cigarette box implied, Officer Byrne explained that "people tend to hide drugs, paraphernalia or other contraband inside empty cigarette packs." Id. at 9. But, on cross examination, he contradicted himself by agreeing with defense counsel that cigarettes are "frequently found" in their boxes. Id. at 18. Officer Byrne testified that he has found drugs in cigarette packs approximately 20 to 25 times over the course of 14 years on the force. Id.
Officer Byrne seized the cigarette container and placed it on the roof of the car. He then sat in the driver's seat and began looking around. Id. at 20. His search uncovered a small, plastic baggie containing marijuana in the opened sunglass holder above the rearview mirror, which he seized. The policeman then exited the car, opened the cigarette box, and discovered two small baggies of rocklike substances. Id. at 9-13. He seized these as well.
The suppression court ruled that Officer Byrne had probable cause to search Davis' car and refused to suppress the Commonwealth's evidence. Davis appeals one issue. "Did the suppression court erroneously deny [Davis'] motion to suppress physical evidence where the police arrested [him], searched his automobile, and seized evidence from closed containers without probable cause, in violation of the Fourth Amendment to the United States Constitution and Article I Section 8 of the Pennsylvania Constitution ?" Davis' Brief at 4.
The Fourth Amendment to the Constitution of the United States dictates that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ..." Moreover, "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the places to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Similarly, Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania provides:
The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.
"As a general rule, a search conducted without a warrant is presumed to be unreasonable unless it can be justified under a recognized exception to the search warrant requirement." Commonwealth v. Agnew , 411 Pa.Super. 63, 600 A.2d 1265, 1271 (1991). One such exception is a vehicle, because it can drive away. See Commonwealth v. Gary , 625 Pa. 183, 91 A.3d 102 (2014) (plurality opinion). In Gary , the Supreme Court of Pennsylvania reinterpreted Article I, § 8 as paralleling the Fourth Amendment's protections against warrantless searches of automobiles, because "it is desirable to maintain a single, uniform standard for a warrantless search of a motor vehicle, applicable in federal and state court, to avoid unnecessary confusion, conflict, and inconsistency in this often-litigated area." Id. at 138.[2] Hence, *458 Pennsylvania now follows federal law on this issue; "where police possess probable cause to search a car, a warrantless search is permissible." In re I.M.S. , 124 A.3d 311, 317 (Pa. Super. 2015) (discarding Supreme Court of Pennsylvania case law to apply federal, which holds that the probable cause to search a vehicle also licenses an officer to search all sealed containers therein, such as a backpack). See also Commonwealth v. Runyan , 160 A.3d 831 (Pa. Super. 2017) (following In re I.M.S. 's adoption of federal law to permit warrantless search of all purses within a constitutionally searched car without additional probable cause as to the purses themselves).
In light of Gary , Best , and Runyan 's adherence to the federal law on searches of automobiles without warrants, it follows that we should likewise apply the federal standard of review in these cases. In Ornelas v. United States , 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), drug enforcement officers searched a car without a warrant, and the suppression court found both probable cause and reasonable suspicion to support the search. The intermediate appellate court afforded the suppression court's conclusions the same degree of deference it would have afforded a magistrate's grant of a search warrant-namely, the clearly erroneous standard of review-and affirmed.
The Supreme Court of the United States reversed. As Chief Justice Rehnquist explained in setting our national standard of review:
[t]he Fourth Amendment demonstrates a strong preference for searches conducted pursuant to a warrant, and the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches. Were we to eliminate this distinction, we would eliminate the incentive.
We therefore hold that as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal.
Id. at 699, 116 S.Ct. 1657. Hence, when police proceed outside of the constitutionally preferred process of seeking judicial approval prior to invading someone's privacy (i.e. , a warrantless search), they do so at their peril and invite upon their actions the highest degree of scrutiny on appeal-de novo review.
However, when, as here, the Commonwealth has won at the suppression hearing, our scope of review is limited to "only the evidence for the Commonwealth *459 and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous." Commonwealth v. Jones , 605 Pa. 188, 988 A.2d 649, 654 (2010). Indeed, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas , supra , at 699, 116 S.Ct. 1657.
Applying the de novo standard from Ornelas to the undisputed facts of this case, we find no probable cause to validate the search of Davis' vehicle. Probable cause arises when "the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. The evidence required to establish probable cause must be more than a mere suspicion or a good faith belief on the part of the police officer." Runyan , 160 A.3d at 837 (quoting Commonwealth v. Lechner , 454 Pa.Super. 456, 685 A.2d 1014, 1016 (1996) ). The suppression court omitted the critical, second sentence of that quote. Trial Court Opinion at 4. Thus, the court failed to consider if Officer Byrne had "mere suspicion," rather than the level of "knowledge ... sufficient to warrant a person of reasonable caution in the belief that an offense" occurred. Runyan , supra .
Additionally, in finding probable cause, the suppression court cited to only a handful of facts from the complete record: (1) the car was on the sidewalk, (2) the driver's door was open, (3) he was asleep in the front seat, (4) he could not "provide [an] intelligible account as to how the car he was driving ended up off the road," and (5) his speech was slurred. Trial Court Opinion at 5. The suppression court acknowledged only one fact (out of many present on the record) that weighed against a finding of probable cause-i.e. , that Davis did not smell of alcohol. Id. Thus, the suppression court's analysis failed to consider the "totality of the circumstances" found within the record. See Illinois v. Gates , 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
That totality includes several more facts that weigh heavily against the conclusion that probable cause existed. To begin with, Officer Byrne was the only person, out of the six at the scene, who believed that Davis "was under the influence of something." N.T. at 9. The suppression court overlooked this telling fact altogether. Two police officers from Philadelphia, two paramedics, and the officer's own partner were all present. Nothing indicates that any of them believed that Davis was under the influence of an illegal substance or that he was incapable of safe driving. Indeed, Philadelphia's police drove off without either mentioning to Office Byrne that they thought a crime had occurred or conducing a full-scale investigation.
Likewise, the paramedics examined Davis and departed without telling the officer that Davis was unfit to drive. It seems highly improbable that both the Philadelphia police and a trained EMS team would fail to act if they believed that Davis' continued operation of a vehicle was a threat to himself or others. Thus, the only reasonable inference to be drawn from their collective lack of intervention is that they deemed him fit to drive. Hence, Officer Byrne was alone in his suspicion of Davis' intoxication.
Additionally, Officer Byrne testified that he had a "little suspicion something was *460 going on." Id. We have long held that "mere suspicion" is not probable cause. See Runyan , supra, at 837. In fact, the officer did not even know precisely what crime he suspected Davis had committed. He only "believed [Davis] was under the influence of something ." N.T. at 9 (emphasis added). He did not smell drugs or alcohol about Davis or the car; administer a field sobriety test to confirm or dispel his suspicion; or observe that Davis had bloodshot and glassy eyes.
Thus, the suppression court's reliance upon Commonwealth v. Best , 120 A.3d 329 (Pa. Super. 2015) to deny Davis' motion was misplaced. The Best Court faced factual circumstances markedly different from those at bar. Best had caused a nearly fatal head-on collision by crossing the center line; exhibited "a strong odor of alcohol, slurred speech, and bloodshot, glassy eyes" to the responding officer; confessed at the scene to consuming "three to four beers;" and failed a field sobriety test. Id. at 334.
Here, by contrast, Davis' vehicle was harmlessly parked on the sidewalk with no signs of trespass, damage, or injury. Davis never admitted to drinking or taking anything that would impair his driving abilities. And the only indicia of intoxication were slurry speech and difficulty in answering the officer's inquiries. As Davis states in his brief, this "evidence was equally consistent with someone who had pulled his car onto the sidewalk because he needed to sleep." Davis' Brief at 14. We agree, especially in light of the EMS personnel taking no steps to prevent Davis from driving any further.
After the paramedics drove away, we do find that Officer Byrne had reasonable suspicion to pat-down Davis. See Terry v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion is "simply ... a particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas , supra, at 1661 (quoting United States v. Cort e z , 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (emphasis added). There were sufficient facts present to satisfy that two-part test and give Officer Byrne reasonable suspicion that Davis was under the influence of "something." He found Davis asleep in the driver's seat of a car parked with four wheels on the sidewalk and having slurred speech upon waking. The officer's suspicions were "particularized," because Davis was the person whom the officer found behind the wheel and who was having difficulty answering questions. And that suspicion, when objectively viewed, could lead one to suspect that something illegal-i.e. , driving under something's influence-may have occurred. People usually do not park their cars with all four wheels on the sidewalk, and they rarely fall asleep in their front seats. Davis had done so; thus, his actions and circumstance made him a suspicious individual. In other words, this was not a random stop-and-frisk.
However, that pat-down produced no evidence of the influence that the policeman suspected may have prompted Davis' impromptu rest-stop. At that point, this investigation was constitutionally closed, because Officer Byrne's trail of suspicion had run cold. The lack of hard evidence to convert Officer Byrne's mere suspicion into reasonable belief-combined with the lack of an incriminating odor emanating from Davis or his vehicle; the lack of a failed, field sobriety test; the lack of bloodshot, glassy eyes; and the lack of concern from the other five people at the scene-leads us to conclude that there was insufficient *461 knowledge to make a reasonable person believe that Davis had committed a specific crime.
Thus, we find insufficient facts of record to giving rise to probable cause, when weighed against those that negate it. So, while the Terry frisk was constitutional, the officer's search of Davis' vehicle afterwards was not. The trial judge should have suppressed the marijuana stashed in Davis' sunglass holder, because the Commonwealth obtained it unconstitutionally.
Lastly, the suppression court's conclusion that Officer Byrne's seizure and search of the cigarette container was permissible under Runyan as a sealed item, located within a constitutionally searched vehicle, was also in error. Because Office Byrne's vehicle search violated the Fourth Amendment for want of probable cause, when he seized and searched the cigarette box, the policeman plucked defiled fruits from a "poisonous tree." Nardone v. United States , 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939) ; see also Wong Sun v. United States , 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Hence, the trial court should have suppressed the cigarette box's contents as well. By denying Davis' motion to suppress all of the items that Officer Byrne illegally seized from the vehicle, the court erred.
Judgment of sentence vacated; case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

All Notes of Testimony ("N.T.") are from the suppression hearing conducted on September 18, 2017.

Chief Justice Saylor and three former justices joined the result reached in Commonwealth v. Gary , 625 Pa. 183, 91 A.3d 102 (2014) (plurality opinion), but there was not a majority opinion. "When a court is faced with a plurality opinion, usually only the result carries precedential weight; the reasoning does not." Commonwealth v. Bethea , 574 Pa. 100, 828 A.2d 1066, 1073 (2003).
A panel of this Court explained its decision to apply Gary 's result in the following terms:
The decision in Gary was decided by a six-justice court. In an Opinion Announcing the Judgment of the Court, former Justice McCaffery, speaking for former Chief Justice Castille and [former] Justice Eakin, adopted the federal automobile exception for warrantless vehicle searches. Chief Justice Saylor wrote a Concurring Opinion that joined the lead Opinion in adopting the federal rule, but expressed concerns with the adoption of a bright line rule. Justice Todd wrote a Dissenting Opinion that was joined by Justice Baer. Former Justice Orie Melvin did not participate.
Commonwealth v. Best , 120 A.3d 329, 346 n. 4 (Pa. Super. 2015). Best did not seek reconsideration or an allowance of appeal. Therefore, we must follow Gary , because Best followed Gary . Under the doctrine of stare decisis , a panel must adhere to the precedents that this Court's prior panels have handed down. See Commonwealth v. Prout , 814 A.2d 693, 695 n. 2 (Pa. Super. 2002) ; Prudential Property and Casualty Insurance Co. v. McAninley , 801 A.2d 1268, 1274 (Pa. Super. 2002), reversed on other grounds 571 Pa. 490, 812 A.2d 1164 (Pa. 2002).