J-A17040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RAMON PADILLA :
:
Appellant : No. 1110 EDA 2020

Appeal from the Judgment of Sentence Entered March 4, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003828-2019

BEFORE: McLAUGHLIN, J., KING, J., and PELLEGRINI, J.*

DISSENTING MEMORANDUM BY PELLEGRINI, J.:

**FILED DECEMBER 29, 2021**

Because the uncontroverted facts establish that Padilla was not frisked

for officer safety but for reasons that the police officers did not remember,

reasonable suspicion was not established. Accordingly, I respectfully dissent.

At the suppression hearing, the Commonwealth called Officer Ryan

Redmond, the officer who conducted the frisk. As part of his testimony, the

Commonwealth played his body camera (body-cam) footage to show what

happened during the traffic stop. On the night of Padilla's arrest, around

10:00 p.m., Officer Redmond was on patrol with Officers Mark Wildsmith and

Robert McGrody. While on patrol, Officer Redmond saw a white Toyota Corolla

_____

* Retired Senior Judge assigned to the Superior Court.

with dark-tinted windows. Because he could not see inside the vehicle, Officer Redmond pulled the car over. The car's driver complied and pulled over around the 3100 block of E Street. There were three males in the car; Padilla was in the front passenger seat. The officers obtained their IDs and handed them to Officer Wildsmith to run them through the patrol car's computer system. While that was occurring, Officer Redmond stood on the passenger side of the car while Officer McGrody was on the driver's side. Officer Redmond described the area as being "a high-drug and crime area" with "lots of shootings."

According to Officer Redmond, Padilla adjusted his groin area several times during the traffic stop as if he were "trying to conceal something." Officer Redmond did not immediately remove Padilla from the car, nor did he tell him to stop reaching for his groin. Instead, as his body-cam footage showed, Officer Redmond talked to Padilla and the backseat passenger while Officer Wildsmith was checking the IDs. First, Officer Redmond asked Padilla what was in a shoe box near his feet. Padilla responded that it was shoes and reached down and opened the shoe box to show it to Officer Redmond. Next, the backseat passenger told Officer Redmond that he was at work that day. Officer Redmond turned his attention to him, asking him for his name and whether he had been "locked up" before. The backseat passenger responded that he had. Finally, Officer Redmond then turned back to Padilla and asked him what was in his pocket. Padilla stuck his hand in his pocket and pulled

out a pill bottle. Officer Redmond asked if the pills were his, to which Padilla responded they were.

After Padilla showed Officer Redmond the pill bottle, Officer Redmond walked pack to the patrol car. Officer Wildsmith told him that the backseat passenger had a warrant for trespassing. *Id*. at 23-24. Officer Redmond confirmed at the suppression hearing that Officer Wildsmith was not referring to Padilla. *Id*. at 24. Officer Redmond then said, "he seemed pretty calm." *Id*.

Officer Wildsmith then began to look down at a cell phone. While he did so, Officer Redmond asked, "[i]s that one of them?" *Id*. at 25. When asked if he recalled what he was referring to, Officer Redmond responded that he did not. *Id*. Then, when Officer Wildsmith nodded his head in response to Officer Redmond's question, Officer Redmond asked, "[t]he guy in the passenger or front-seat passenger," with Officer Wildsmith responding, "[f]ront." *Id*. Again, when asked if he recalled what this was about, Officer Redmond responded, "I don't." *Id*. at 26. Officer Wildsmith, meanwhile, responded the same, stating: "I don't recall exactly. I'm not going to sit up here under oath and say I remember exactly because I don't." *Id*. at 37.

After that, Officer Redmond asked Officer Wildsmith to "pull him out." *Id*. at 27. Officer Redmond then said, "[l]et's check him out," which he confirmed at the hearing.

> Q. Just stopping the [body cam footage], Officer. You would agree that's you saying, "Let's check him out."

- 3 -

A. Yes.

Q. And that's, again, referring to Mr. Padilla.

A. Yes.

*Id*.

Officer Redmond next prepared to approach the car but waited a few moments for Officer Wildsmith in case Padilla tried to run. *Id*. at 30. At that moment, however, a police sergeant pulled up and got out of his car, at which point Officer Redmond walked to the passenger door and said to Padilla, "[a]ll right, my man, step out for me." *Id*. at 28.

The majority finds that reasonable suspicion existed because:

> Although Appellant contends that his alleged movements provided the sole basis for Officer Redmond's suspicion that Appellant was armed and dangerous, the record shows that various factors existed to support reasonable suspicion: (1) Officer Redmond's four years' experience as a Philadelphia Police Officer; (2) a roadside vehicle stop; (2) the stop occurred at nighttime; (3) the vehicle had tinted windows; (4) the stop occurred in a high crime area; (5) the area was known for gun violence; (6) Appellant made furtive movements towards his groin; (7) Appellant's hand movements were associated with an area used for secreting a weapon; and (8) the pat-down occurred for protection of the police officers. (citations omitted.)

Majority Memorandum, at 16.

I disagree with the majority because it was apparent from the testimony of Officer Redmond and Officer Wildsmith, confirmed by the body-cam footage and the trial court's finding, that Padilla was not searched because for fear of officer safety.

- 4 -

At the outset, I recognize we are bound by the suppression court's factual findings that are supported by the record. Officer Redmond testified that he saw that Padilla "kept on like adjusting his groin area, like trying to conceal something." **See** N.T., 10/9/19, at 8. While the body-cam footage does not depict the movements, there is also nothing in the body-cam footage to contradict Officer Redmond's testimony that he observed the movements. Because Officer Redmond testified that he saw the movements and the suppression court credited that testimony, we are bound by that factual finding. I also agree that the other factors mentioned by the majority can be taken into consideration in determining whether an officer can conduct a search, but absent Padilla's movements, there would be no basis to conduct the search because if that were so, just driving in that neighborhood would justify a search. However, I disagree with the majority because the uncontradicted facts evidence that officer safety or any belief that Padilla was armed and dangerous was not the reason for the search. Moreover, it is the Commonwealth's burden to show reasonable suspicion for the search, and neither Officer Redmond nor Officer Wildsmith could not provide any reason why they decided to "check [Padilla] out."

First, the uncontradicted facts show that after observing Padilla's furtive movements in a high crime neighborhood in a car with tinted windows at night, Officer Redmond, with his four years' experience, did not immediately remove Padilla from the vehicle nor show any concern about his personal safety or

that he believed that Padilla was armed and dangerous. Instead, after observing those movements, Officer Redmond:

- did not remove Padilla from the car but talked to Padilla and the backseat passenger while the other officer was checking IDs.

- asked Padilla what was in a shoe box near his feet, Padilla responded and allowed him to reach down and open the shoe box to show it to him with not a concern that a weapon may be in it.

- then turned his attention to the backseat passenger and asked him for his name and whether he had been "locked up" before. The backseat passenger responded that he had.

- then turned back to Padilla and asked him what was in his pocket. He permitted Padilla, without concern, to put his hand in his pocket from which he pulled out a pill bottle. Officer Redmond asked if the pills were his, to which Padilla responded they were.

Officer Redmond's conduct is not consistent that had a reasonable suspicion that Padilla was armed and dangerous or that he was in any danger. If so, with the other two officers that were on scene, he would have ordered the occupants to exit the car immediately for his protection and that of his fellow officers.

Moreover, the body-cam footage conclusively confirms that officer safety was not the reason for the search. After engaging in the conduct described above, Officer Redmond returned to the police car to talk with Officer Wildsmith, most of which Officer Redmond was asked about on cross-examination and confirmed.

That footage contradicts Officer Redmond's contention that he pulled Padilla out of the car and frisked him for officer safety. In fact, the suppression

court addressed these facts in its Rule 1925(a) opinion and acknowledged that

Officer Redmond and Officer Wildsmith decided to remove Padilla from the car

and check him out.

> Officer Redmond then returned to the patrol car to speak with Officer Wildsmith. The content of the conversation was unclear but it is undisputed that Officers Redmond and Wildsmith referenced [Padilla] as the "front-seat passenger." Neither officer could remember the reason for the reference to [Padilla], nor does the body worn camera footage clarify the context. Officer Redmond then asked Officer Wildsmith to "pull him [Padilla] out" and said "let's check him out." **It is clear from the testimony and the footage that the officers decided to remove [Padilla] from the vehicle**.

Trial Court Opinion, 10/21/20, at 3 (emphasis added).

The majority ignores the trial court finding that Officer Redmond and

Officer Wildsmith decided to remove Padilla from the car and "check him out"

after their conversation and could not provide a reason why they did so. As a

result, both the suppression court's analysis and the majority overlook the

"totality of the circumstances" of the traffic stop, including the evidence that

contradicted Officer Redmond's contention that he frisked Padilla out of safety

concerns. *See Commonwealth v. Davis*, 188 A.3d 454, 459-60 (Pa. Super.

2018) (reversing suppression court's probable cause finding for vehicle search

where court acknowledged only one fact weighing against probable cause and

ignored all other facts that weighed heavily against probable cause).

Likewise, the majority's analysis disregards Officer Redmond and Officer

Wildsmith's conversation as depicted in the body-cam footage. According to

the majority, this conversation "did not negate the officer's concern for

safety." **See** Majority Memorandum, at 18. Under this rationale, Officer Redmond saw Padilla adjust his groin and concluded that Padilla was possibly armed and dangerous but engaged in the previously described conduct that was inconsistent with any such belief. What is shown on the body-cam footage is that Officer Redmond and Officer Wildsmith decided to check out Padilla based on a reason that neither could explain at the suppression hearing. If you, the officer, can't explain why the search occurred, obviously reasonable suspicion has not been made out.

For these reasons, I would reverse the suppression court's order denying suppression and reverse all of Padilla's convictions for firearm possession.

Accordingly, I respectfully dissent.