J-S25015-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY EDWARD LEHMAN | : | |
| | : | |
| Appellant | : | No. 403 EDA 2024 |

Appeal from the Judgment of Sentence Entered August 31, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001606-2022

BEFORE: DUBOW, J., McLAUGHLIN, J., and BECK, J.

MEMORANDUM BY DUBOW, J.: **FILED AUGUST 15, 2024**

Appellant, Jeffrey Edward Lehman, appeals from the August 31, 2023 judgment of sentence of 6 to 12 years of incarceration entered in the Montgomery County Court of Common Pleas following his conviction of Persons not to Possess a Firearm, Firearms not to be Carried Without a License, Resisting Arrest, Possession of a Controlled Substance, and Possession of Drug Paraphernalia.[1] Appellant challenges the denial of his motion to suppress and the discretionary aspects of his sentence. After careful review, we affirm.

The relevant facts and procedural history are as follows. On March 13, 2022, at 5:30 AM, the Pennsylvania State Police dispatched Troopers Matthew Taylor and Dalson Heinrich, among others, to an apartment complex in

---

[1] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), and 5104; and 35 P.S. §§ 780-113(a)(16) and (a)(32), respectively.

Perkiomenville Township based on information from an anonymous caller that a suspicious vehicle, operated by Appellant, had been parked in the complex's parking lot for several hours with the engine running. The anonymous caller, later revealed to be Appellant's ex-girlfriend, also informed the police that Appellant was a convicted felon, was not permitted to possess firearms, and that he carried weapons from time to time.

The troopers arrived on the scene in a marked patrol vehicle with its overhead lights off and pulled the vehicle diagonally behind Appellant's vehicle approximately one car's length away, leaving enough room that Appellant could have pulled his vehicle away.[2] They immediately observed Appellant's vehicle legally parked with the engine running and the headlights illuminated. While approaching the vehicle, they dusted snow off Appellant's license plate. When they arrived at the vehicle's windows, they noticed Appellant, either asleep or unconscious, in the driver's seat. The troopers attempted to wake Appellant, first by tapping on the driver's side window, and then by shining their flashlight in the window. Eventually, they were able to wake Appellant who indicated he had been visiting a friend in the adjacent apartment complex. The troopers initially detected that Appellant's eyes were bloodshot and unreactive to light, and that Appellant could not maintain eye contact. The troopers also observed an open container of an alcoholic beverage and

_____

[2] N.T. Suppression Hr'g, 12/13/22, at 54 (where suppression court made finding of fact that the police officers "parked on an angle behind [Appellant's] vehicle which could have left, it was not parked in, so-to-speak").

other unopened bottles in the center console. The officers questioned Appellant, who "kept constantly drinking water [and] reach[ed] around in the vehicle a lot." N.T. Suppression Hr'g, 12/13/22, at 9. Trooper Taylor instructed Appellant not to reach around the vehicle, and to show his hands, but Appellant repeatedly refused to follow Trooper Taylor's instructions. Then, based on what they saw in the car and their suspicion that he was under the influence of alcohol, the troopers asked Appellant multiple times to exit the vehicle so they could administer sobriety tests. In response, Appellant closed his window and turned the vehicle's engine off, did not exit the vehicle, and asked to see the troopers' supervisor, who subsequently arrived on the scene. The troopers made several more requests that Appellant exit the vehicle, but Appellant continued to refuse to comply. During this time, the troopers observed that Appellant appeared very anxious, could not keep his hands still, and refused to follow directions when instructed to keep his hands on the steering wheel. Appellant repeatedly made furtive movements towards the passenger seat, the driver's side door, and into his coat.

Ultimately, Appellant exited the vehicle. While he was doing so, the troopers observed Appellant hide a black semi-automatic pistol in a pocket located inside the driver's side door. The troopers immediately attempted to take Appellant into custody, but Appellant resisted. Eventually, the troopers were able to take Appellant into custody and subsequently retrieved the firearm, which they determined was loaded, and the open alcoholic containers. During a search of Appellant's person incident to arrest, the troopers

recovered Appellant's wallet from his pocket which contained methamphetamine and a straw containing a white residue. Authorities later confirmed that Appellant did not have a license to carry a firearm and had a prior felony conviction which prohibited him from possessing a firearm.

On June 16, 2022, Appellant filed an omnibus pretrial motion seeking to suppress the evidence discovered in his vehicle and on his person as the result of an illegal search. On December 13, 2022, the trial court held a hearing on the motion. Troopers Taylor and Heinrich testified consistent with the above facts. Trooper Taylor also testified that his patrol vehicle was equipped with a Network Video Recorder ("NVR") system that recorded video of the troopers' interaction with Appellant. He further testified that at some point during the interaction the battery on the NVR system's microphone stopped working. The Commonwealth presented as evidence a 4-minute portion of the video recording. In response to the Commonwealth's inquiry, Trooper Taylor testified that "a sober driver in [Appellant's] vehicle could have backed out or moved [his] car[.]" *Id.* at 17. With respect to the impoundment and inventory search of Appellant's vehicle, Trooper Taylor testified that, because Appellant did not live at the property, the police determined towing the vehicle was proper. He further testified that there were so many items in the vehicle that the police did not do a full search of it and did not inventory all of the items found within it, even though police policy requires all items in the car should be documented when an inventory search is done.

- 4 -

Trooper Heinrich testified that he observed Appellant acting "very nervous" and "making a lot of quick movements within the vehicle." *Id.* at 32. He testified that initially Appellant refused to exit his vehicle, but eventually, "in the midst of making like quick movements and reaching around in his coat and in one quick motion, he open[ed] the door really quickly, put both hands in the door runner and then shut the car door real quick" with what looked like a semi-automatic pistol in his hands. *Id.* at 32-33. Trooper Heinrich confirmed that he "actually saw [Appellant] hide a gun in the car as he got out." *Id.* at 33.

Following presentation of the Commonwealth's evidence, Appellant argued that the police officers "pulled in significantly close to the rear of [Appellant] which is a show of you're not free to go," and that the officers initiated an illegal investigative detention because they did not have "any belief that criminal activity was taking place." *Id.* at 43-44. He further argued that the inventory search of Appellant's vehicle was unlawful because: (1) there was no reason to impound Appellant's car as it was lawfully parked, with the engine off, and not obstructing any other vehicles; and (2) the police officers did not follow their department's procedures for conducting and documenting the inventory search.

The Commonwealth argued that the search was justified and lawful because, even though the police officers did not follow their department's inventory search policy to its "fullest extent," after the officers saw Appellant attempt to conceal a firearm, they conducted the search to "make sure people

were safe." **Id.** at 52. It also argued in the alternative that the search was lawful because the encounter began as a mere encounter "to see what is going on and make sure everybody is okay," which escalated to an investigative detention based on the presence of open alcohol containers in the vehicle and Appellant "showing classic signs of intoxication; those glassy, bloodshot eyes[, Appellant] refusing to make contact," and refusing to exit his vehicle when asked. **Id.** at 51. The Commonwealth argued that the warrantless search was justified by Appellant's "anxious[,]" furtive movements and reaching around the vehicle for an extended period of time, before ultimately putting the firearm in the front pocket area of the driver's side front door as he exited the car. **Id.** at 51-52. The Commonwealth also argued that exigent circumstances were present, the firearm was in plain view, and that, in any event, the officers would have inevitably discovered the evidence because Appellant's vehicle was going to be towed as he did not live at the property, was not supposed to park it there for the night and could not drive the vehicle away because he was in police custody.

After considering the evidence and arguments, the suppression court concluded that, based on the above facts, "it became apparent rather quickly that the trooper had every reason to believe [Appellant] was . . . breaking the law by driving under the influence to that location." **Id.** at 56. The court found that the troopers had "every reason to investigate the suspicious vehicle" and observed that "[t]hings very, very quickly ripened into reasonable suspicion that criminal activity was afoot." **Id.** at 57. With respect to the

items seized by the troopers, the court concluded that "whether you consider it an inventory search or not, [the items] were observed in plain view and known to be associated, immediately upon viewing, with criminal activity." *Id.* Because the officers knew Appellant was a felon not to possess, "[u]pon seeing the gun, that obviously is probable cause to arrest." *Id.* Accordingly, the suppression court denied Appellant's motion to suppress.

Appellant proceeded to a bifurcated trial, where a jury convicted him of Firearms not to be Carried Without a License, Resisting Arrest, Possession of a Controlled Substance, and Possession of Drug Paraphernalia, and the court convicted him of Persons not to Possess a Firearm. The trial court deferred sentencing pending preparation of a pre-sentence investigation ("PSI") report.

On August 31, 2023, the trial court held a sentencing hearing at which Appellant presented the testimony of three character witnesses and testified on his own behalf. After considering, *inter alia*, the testimony, counsels' arguments, and Appellant's PSI report, the court imposed an aggregate term of 6 to 12 years of incarceration, a sentence at the bottom of the standard-range of the sentencing guidelines, followed by 4 years of probation.

On September 6, 2023, Appellant filed a post-sentence motion claiming, *inter alia*, that "the court's sentence was in excess as it did not take into consideration the mitigated evidence presented at sentencing." Post-Sentence Motion, 9/6/23, at 1. The trial court denied the motion on December 21, 2023.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following two issues for our review:

1. Whether the [t]rial [c]ourt erred in denying [] Appellant's [m]otion to [s]uppress [s]tatements [m]ade and [e]vidence [s]eized where the police encounter with [] Appellant was an investigative detention and therefore the seizure was not supported by reasonable suspicion where [] no criminal activity was afoot[?]

2. Whether the [s]entencing [c]ourt abused its discretion in sentencing [Appellant] to 6 to 12 years['] plus 4 years' probation at the bottom of the standard range where the [c]ourt indicated on the record that the sentence would be at the bottom of the mitigated range[?] Further, the [sentencing c]ourt sentenc[ed] Appellant without adequately considering his family background, work history, addiction to opiates, and remorse.

Appellant's Brief at 6.

**A**.

In his first issue, Appellant challenges the denial of his motion to suppress. "Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012). Our scope of review of the suppression court's factual findings is limited to the

record from the suppression hearing. ***Commonwealth v. Barr***, 266 A.3d 25, 39 (Pa. 2021). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." ***Commonwealth v. Cephus***, 208 A.3d 1096, 1098 (Pa. Super. 2019) (citation omitted). We defer to the suppression court, "as factfinder[,] to pass on the credibility of witnesses and the weight to be given to their testimony." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003). Additionally, an appellate court can affirm a valid judgment for any reason supported by the record. ***Commonwealth v. Conforti***, 303 A.3d 715, 729 (Pa. 2023).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution "protect citizens from unreasonable searches and seizures." ***In re D.M.***, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." ***Commonwealth v. Beasley***, 761 A.2d 621, 624 (Pa. Super. 2000).

This Court has identified three categories of interactions between police and a citizen: (1) mere encounter, (2) investigative detention, and (3) custodial detention. ***Commonwealth v. Downey***, 39 A.3d 401, 405 (Pa. Super. 2012). When determining whether an individual is subject to a mere encounter or an investigative detention, "[t]he pivotal inquiry is whether, in

light of the facts and circumstances[], a reasonable man, innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes." *Commonwealth v. Hampton*, 204 A.3d 452, 458 (Pa. Super. 2019) (citation omitted). A mere encounter between a police officer and a citizen does not need to be supported by any level of suspicion and "carries no official compulsion on the part of the citizen to stop or to respond." *Commonwealth v. Fuller*, 940 A.2d 476, 479 (Pa. Super. 2007) (citation omitted). There is no constitutional provision that "prohibits police officers from approaching a citizen in public to make inquiries of them." *Beasley*, 761 A.2d at 624.

Reasonable suspicion to support an investigative detention is present when there are "specific and articulable facts[] that criminality is afoot." *Commonwealth v. Zhahir*, 751 A.2d 1153, 1156 (Pa. 2000). Whether reasonable suspicion exists is determined by viewing the totality of the circumstances as seen by a trained police officer. *Commonwealth v. Cunningham*, 287 A.3d 1, 9 (Pa. Super. 2022).

Reasonable suspicion of DUI can arise where an officer observes "classic signs" of intoxication such as the odor of intoxicants, slurred speech and glassy eyes. *Commonwealth v. Cauley*, 10 A.3d 321, 327 (Pa. Super. 2010).

While an anonymous tip alone is usually not enough to establish reasonable suspicion, a combination of such a tip and other factors (*e.g.*, an

officer's corroboration of the tip through independent observation of suspicious behavior) may suffice. *Zahir*, 751 A.2d at 1157.

Generally, "a search conducted without a warrant is presumed to be unreasonable unless it can be justified under a recognized exception to the search warrant requirement." *Commonwealth v. Davis*, 188 A.3d 454, 457 (Pa. Super. 2018) (citation omitted). These exceptions include, *inter alia*, the plain view exception, the stop and frisk exception and the search incident to arrest exception. *Commonwealth v. Smith*, 285 A.3d 328, 332 (Pa. Super. 2022).

"The plain view doctrine allows the admission of evidence seized without a warrant when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." *Id.*

"In determining whether the incriminating nature of an object is immediately apparent to the police officer, [the court must] look to the totality of the circumstances. An officer can never be one hundred percent certain that [an object] in plain view is incriminating, but his belief must be supported by probable cause." *Id.* at 333 (internal citation omitted). When reviewing whether an object's criminal nature is immediately apparent, probable cause "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that [an object is incriminating]; it does not demand any showing that such a belief be correct or more likely true than

false. A practical, non-technical probability that incriminating evidence is involved is all that is required." *Id.* (internal citation omitted).

"Where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question." *Id.* (internal citation omitted). The use of a flashlight into the interior of a vehicle does not negate plain visibility for purposes of the plain view doctrine. *Commonwealth v. Merkt*, 600 A.2d 1297, 1299 (Pa. Super. 1992).

"The search incident to arrest exception allows arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, to search both the person arrested and the area within his immediate control." *Commonwealth v. Simonson*, 148 A.3d 792, 799 (Pa. Super. 2016) (internal citation and quotation marks omitted).

**B.**

Appellant claims that the trial court erred in denying his motion to suppress because the interaction between Appellant and the police officers was from the beginning an illegal seizure and an investigative detention not supported by either reasonable suspicion or probable cause. Appellant's Brief at 19. In support, Appellant emphasizes that the troopers: (1) pulled in behind Appellant's vehicle; (2) approached both the passenger and driver's sides of his vehicle; (3) ordered him to lower his window; and (4) then ordered him to exit the vehicle. *Id.* at 18. Appellant asserts that information from an

anonymous source that a suspicious vehicle, operated by Appellant, had been parked for a while with its engine running does not support a reasonable suspicion that criminal activity is afoot. *Id.* at 19. Appellant concludes that, because the interaction between him and the officers was an illegal investigative detention and seizure from the outset, the court should have suppressed all observations, statements, and evidence obtained therefrom. *Id.*

In the instant case, the suppression court explained its finding that the interaction between Appellant and the police officers began as a mere encounter in response to concerns about a vehicle that was parked and running, and that Appellant was not "seized" at that time because the troopers had not parked in such a way as to block Appellant's vehicle from leaving. The court stated:

> Here, [] authorities were dispatched to investigate a suspicious vehicle based upon a tip from a third party. The troopers did not activate their lights or siren as they approached the vehicle and did not block the vehicle's path to leave the scene. The subject vehicle was running and [Appellant] could not have felt restrained from leaving the scene when the troopers approached his vehicle considering he was asleep at the time. The only arguably intrusive conduct involved the troopers attempting to wake [Appellant] by knocking on the window and shining a flashlight into the passenger compartment. These actions constituted minimally intrusive observations to ensure [Appellant's] well-being and to see if he was capable of driving away. As a mere encounter, this interaction did not need to be supported by any reasonable suspicion.

Trial Ct. Op., 2/21/24, at 10-11.

- 13 -

The trial court also explained its reasons for finding the officers had reasonable suspicion that criminal activity was afoot as follows:

Trooper Taylor's subsequent observation of an open alcoholic beverage container in the center console in addition to [Appellant's] bloodshot eyes and [Appellant's] inability to maintain eye contact all occurred during the course of the mere encounter and provided the trooper with evidence supporting a reasonable suspicion of criminal activity related to driving while intoxicated. Thus, to the extent this interaction transformed into an investigative detention over time, such a detention was supported by reasonable suspicion acquired during the mere encounter phase of the interaction. [Appellant] subsequently displayed signs of anxiety and engaged in furtive movements which also contributed to reasonable suspicion [of] criminal activity. [Appellant] also refused multiple police requests to exit his vehicle and ignored additional instructions to keep his hands on the steering wheel.

*Id.* at 11.

Last, the trial court explained why it found that the plain view doctrine justified the officers' seizure of the open alcoholic beverage and the firearm. The court stated:

Specifically, Trooper Taylor viewed the open beverage container from a lawful vantage point, it was immediately apparent that the object was incriminating, and the trooper had lawful right of access to the object in light of the other indications of intoxication establishing that [Appellant] was engaging in criminal activity. With respect to the firearm, Trooper Heinrich observed the firearm from a lawful vantage point, it was immediately apparent that the object was incriminating and the trooper had lawful right of access to the object in light of [Appellant's] furtive movements, nervousness and refusal to obey commands which established that [Appellant] was also engaging in criminal activity by possessing a firearm that he was not permitted to carry.

*Id.*

Our review of the record indicates that Trooper Taylor testified that he responded to concerns about a suspicious vehicle by approaching Appellant's vehicle without activating his lights or siren, parked his patrol car, and observed Appellant asleep in his still-running car. Trooper Taylor did not position his police vehicle in a way that would have blocked Appellant's avenue of exit; thus, had Appellant been awake, he would have been capable of leaving the area. As Trooper Taylor began talking with Appellant he noticed numerous indicia of intoxication.

Given the totality of the circumstances, we conclude that the police officers' interaction with Appellant was, initially, a mere encounter until Trooper Taylor's observations of the indicia of intoxication and Trooper Heinrich's observation of a firearm by a person he knew was prohibited from possessing a firearm provided them with reasonable suspicion that Appellant had engaged in criminal activity, *i.e.*, driving while intoxicated and possession of a firearm by a person known to be prohibited from possessing a firearm. Accordingly, the trial court did not err in denying Appellant's motion to suppress.

## C.

In his second issue, Appellant asserts that the trial court imposed an excessive sentence when it failed to consider mitigating factors.[3] Appellant's

---

[3] To the extent that Appellant also asserts that the sentencing court erred by imposing a sentence at the bottom of the standard range after stating that it
*(Footnote Continued Next Page)*

Brief at 20-22. This issue raises a challenge to the discretionary aspects of his sentence.

An appellant raising such a challenge is not entitled to review as of right; rather, a challenge in this regard is properly viewed as a petition for allowance of appeal. 42 Pa.C.S. § 9781(b); ***Commonwealth v. Tuladziecki***, 522 A.2d 17, 18-19 (Pa. 1987); ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1265 (Pa. Super. 2014).

In order to obtain this Court's review, an appellant challenging the discretionary aspects of his sentence must comply with the following requirements: (1) file a timely notice of appeal; (2) preserve the issue at sentencing or in a motion to reconsider and modify sentence; (3) include within his brief a concise statement of the reasons relied upon for allowance of appeal as required by Pa.R.A.P. 2119(f); and (4) raise a substantial question that the sentence is inappropriate under the Sentencing Code. ***Commonwealth v. Griffin,*** 65 A.3d 932, 935 (Pa. Super. 2013).

Here, Appellant filed a timely appeal, preserved his issue in a post-sentence motion, and included in his brief a Rule 2119(f) statement. In his statement, Appellant argues that the sentencing court abused its discretion by failing to give sufficient weight to mitigating factors such as Appellant's

_____

intended to impose a sentence at the bottom of the mitigated range, we find this issue waived as Appellant did not preserve it in his post-sentence motion. Pa.R.Crim.P. 720(B)(1)(a) (requiring any post-sentence motion to state the grounds for relief with "specificity and particularity"); Pa.R.A.P. 302 ("Issues not raised in the lower court are waived[.]").

work history, physical injuries from a car accident leading to an opiate addiction, charity work, employment in the county prison, and remorse at sentencing. Appellant's Brief at 14. Appellant has, however, failed to cite any law to support his assertion that the failure to consider such mitigating factors raises a substantial question for our review. To the contrary, "this [C]ourt has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Patterson*, 180 A.3d 1217, 1233 (Pa. Super. 2018) (citation omitted). Appellant has, thus, failed to invoke our review of his discretionary sentencing claim. Accordingly, we affirm Appellant's judgment of sentence.

## D.

In sum, we affirm the denial of Appellant's motion to suppress and his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/15/2024