J-S24006-22

2022 PA Super 187

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MALIK SMITH | : | No. 1279 EDA 2021 |

Appeal from the Order Entered June 11, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000500-2021

BEFORE:   PANELLA, P.J., LAZARUS, J., and PELLEGRINI, J.[*]

OPINION BY PANELLA, P.J.:                    **FILED NOVEMBER 4, 2022**

The Commonwealth brings this appeal after the trial court granted Malik Smith's motion to suppress evidence seized following a motor vehicle stop, during which a firearm was observed in the back seat of the car. Upon careful review, we reverse the order and remand for further proceedings.

In the evening of August 15, 2020, Philadelphia Police Officers Kyle Smith and Clifford Gilliam stopped the vehicle being driven by Smith (hereinafter "Appellee"). The officers stopped Appellee's car because it was being operated with excessive tint on the windows in violation of the Motor Vehicle Code.[1]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 4524(e).

At the time that Appellee pulled over his vehicle, Officer Gilliam used a loudspeaker to direct Appellee to roll down all the windows. During the stop, Officer Gilliam approached the driver's side of the vehicle and Officer Smith approached the passenger side. Appellee was the only person in the vehicle. While Officer Gilliam requested that Appellee produce his driver's license and vehicle registration, Officer Smith used a flashlight to illuminate the interior of the vehicle. At that point, Officer Smith observed, through an open passenger window, a firearm on the rear floorboard of the car. Officer Smith alerted Officer Gilliam of his observation, and Officer Gilliam immediately placed Appellee in handcuffs. Appellee was then removed from his vehicle and placed in the rear of the police cruiser. After Appellee was in the police cruiser, Officer Smith retrieved the gun from the rear of Appellee's car. Appellee was charged with person not to possess a firearm, firearms not to be carried without a license, carrying firearms in public in Philadelphia, and sun screening and other materials prohibited.[2]

Appellee filed a motion to suppress. The trial court held a hearing on June 8, 2021. On June 11, 2021, the trial court heard additional testimony from Appellee regarding his permission to use the vehicle. Thereafter, the trial court entered an order granting Appellee's motion to suppress evidence. The

---

[2] 18 Pa.C.S.A. §§ 6105, 6106, 6108, and 75 Pa.C.S.A. § 4524(e), respectively.

Commonwealth filed this timely appeal.[3] Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

In its sole issue, the Commonwealth questions whether the trial court properly suppressed the firearm. **See** Commonwealth's Brief at 8-14. The Commonwealth contends that the officers were permitted to restrain Appellee and access the gun for their own safety. In addition, the Commonwealth asserts that the plain view doctrine permits the admission of the firearm. In its opinion authored pursuant to Pa.R.A.P. 1925(a), the trial court indicated that it agrees with the Commonwealth and "opines that it erred in granting Appellee's suppression motion." Trial Court Opinion, 10/4/21, at 3. Upon careful consideration of the pertinent law and factual record, we agree.[4]

---

[3] Pursuant to Pa.R.A.P. 311(d), in its notice of appeal, the Commonwealth certified that the trial court's suppression order terminates or substantially handicaps the prosecution.

[4] In initially granting Appellee's suppression motion, the trial court, to a certain extent, relied upon **Commonwealth v. Hicks**, 208 A.3d 916 (Pa. 2019), wherein our Supreme Court held that, because a firearm may lawfully be carried and, alone, is not suggestive of criminal activity, police officers may not infer criminal activity merely from an individual's possession of a concealed firearm in public. The **Hicks** Court further explained that, while the possession of a firearm "certainly can be" suspicious, it is but one factor to be considered under the totality of the circumstances presented. **Id**. at 939-40. However, **Hicks** did not involve an otherwise valid stop of the defendant during which the officers discovered a firearm in plain view. Rather, the **Hicks** Court disclaimed any applicability of its decision under those circumstances.

As the **Hicks** Court aptly stated: "We stress, however, that our present analysis is confined to the antecedent justification for a 'stop,' and we accordingly offer no opinion as to whether a police officer who has effectuated
*(Footnote Continued Next Page)*

When reviewing an order granting a defendant's motion to suppress evidence, "we are bound by that court's factual findings to the extent that they are supported by the record, and we consider only the evidence offered by the defendant, as well as any portion of the Commonwealth's evidence which remains uncontradicted, when read in the context of the entire record." *Commonwealth v. Wallace*, 42 A.3d 1040, 1048 (Pa. 2012) (citation omitted). "Our review of the legal conclusions which have been drawn from such evidence, however, is *de novo*, and, consequently, we are not bound by the legal conclusions of the lower courts." *Id*. (citation omitted). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *See In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

Further, Pa.R.Crim.P. 581 provides that "[t]he Commonwealth shall have the burden ... of establishing that the challenged evidence was not

---

a lawful investigative detention may treat the suspect's possession of a firearm as *per se* authorization to 'frisk' the detainee." *Hicks*, 208 A.3d 934. The Court went on to explain, "[a]ccordingly, decisions addressing that separate question, and the consideration of whether an 'armed' individual is automatically 'dangerous' for purposes of a *Terry* frisk, *see*, *e.g.*, *United States v. Robinson*, 846 F.3d 694 (4th Cir. 2017) (*en banc*), have no relevance to this appeal." *Id*. Therefore, as the trial court aptly concluded in this case: "*Hicks* is not applicable because the observation of the firearm did not trigger the vehicle stop and investigation." Trial Court Opinion, 10/4/21, at 8. Interestingly, although Appellee argued in the trial court claiming that *Hicks* is pertinent to this case, *see* N.T., 6/8/21, at 5, he has completely abandoned that contention in his brief to this Court, wherein he makes no reference to the *Hicks* decision. *See* Appellee's Brief at 5-7.

obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H). Specifically, the Commonwealth has the burden of "establish[ing] by a preponderance of the evidence that the evidence was properly obtained." *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. 2011) (citation omitted).

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the right of each individual to be let alone." *Commonwealth v. By*, 812 A.2d 1250, 1254 (Pa. Super. 2002) (citations and quotation marks omitted). "A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." *Commonwealth v. McCree*, 924 A.2d 621, 627 (Pa. 2007) (citation omitted). These exceptions include "the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception, ... the stop and frisk exception, and the search incident to arrest exception." *Commonwealth v. Simonson*, 148 A.3d 792, 797 (Pa. Super. 2016) (citation omitted).

Regarding the automobile exception, in *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020), our Supreme Court reaffirmed that "the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." *Id*.

at 181. In reaching this conclusion, the Court expressly overruled *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014), which had adopted the federal automobile exception to the warrant requirement that allowed police to conduct a warrantless vehicle search based solely on probable cause, with no exigency required beyond the inherent mobility of a motor vehicle. However, the decision in *Alexander* does not address the plain view exception or any alterations to its requirements. Therefore, where the circumstances permit an application of the plain view exception, we need not apply *Alexander*. *See Commonwealth v. McMahon*, 280 A3d 1069, 1074 (Pa. Super. 2022).

The plain view doctrine allows the admission of evidence seized without a warrant when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object. *See Commonwealth v. Collins*, 950 A.2d 1041, 1045 (Pa. Super. 2008) (*en banc*) (citing *McCree*).

"There can be no reasonable expectation of privacy in an object that is in plain view." *Commonwealth v. Bumbarger*, 231 A.3d 10, 20 (Pa. Super. 2020). "The question [of] whether property in plain view of the police may be seized … must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question." *Texas v. Brown*, 460 U.S. 730, 737 (1983). As we have long observed, there is no legitimate expectation of privacy shielding the portion of the interior of an automobile

that may be viewed from outside the vehicle by either an inquisitive passerby or diligent police officers. **See Commonwealth v. Jones**, 978 A.2d 1000, 1005 (Pa. Super. 2009) (citing **Brown**, 460 U.S. at 740). Furthermore, we are mindful that the Motor Vehicle Code provides the statutory authorization for a police officer to stop a motor vehicle "[w]henever a police officer ... has reasonable suspicion that a violation of this title is occurring or has occurred [so that he may] secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title." 75 Pa.C.S.A. § 6308(b).

> In determining whether the incriminating nature of an object is immediately apparent to the police officer, we look to the totality of the circumstances. An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause.

**Commonwealth v. Johnson**, 921 A.2d 1221, 1223 (Pa. Super. 2007) (citations, brackets and quotation marks omitted).

When reviewing whether an object's criminal nature is "immediately apparent," we note that probable cause

> merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief, that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, non-technical probability that incriminating evidence is involved is all that is required.

**Commonwealth v. McEnany**, 667 A.2d 1143, 1148 (Pa. Super. 1995) (citations, emphasis, and quotation marks omitted). "[W]here police officers

observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question." ***Commonwealth v. Brown***, 23 A.3d 544, 557 (Pa. Super. 2011).

Here, the Commonwealth met the first requirement of the plain view test, because Officer Smith viewed the gun from a lawful vantage point. At the suppression hearing, Officer Gilliam testified that Appellee's vehicle stop occurred while the officers were on routine patrol. ***See*** N.T., 6/8/21, at 7-8. Officer Gilliam stated that the stop of the vehicle was precipitated by the observation of a Motor Vehicle Code violation, *i.e.*, excessive tint to the windows. ***See id***. Officer Gilliam indicated that Appellee immediately pulled over when the patrol car activated its lights and siren. ***See id***. at 8. In addition, once the vehicle was stopped, Officer Gilliam used a loudspeaker and directed Appellee to roll down all four windows. ***See id***. at 10-11. Appellee complied with the officer's directive. ***See id***. at 11.

Officer Smith offered similar testimony regarding the police stop. Essentially, he stated that the vehicle was stopped for a Motor Vehicle Code violation, Appellee properly pulled over when the sirens and lights were activated, and Appellee followed the directive to roll down the windows. ***See id***. at 27-28. Officer Smith indicated that, while Officer Gilliam was speaking with Appellee, Officer Smith was standing at the passenger's side of the car

and observed the gun in the back of the car by shining his flashlight into the vehicle. *See id*. at 28, 29. Accordingly, after the officers lawfully stopped Appellee, Officer Smith plainly saw, through an open passenger's side window, a firearm on the rear floor of the vehicle. Therefore, Appellee lacked a reasonable expectation of privacy in the firearm left in plain view.

Under the second requirement of the plain view doctrine, the incriminating nature of the firearm was immediately apparent to the police. Officer Smith, who had been a police officer for 10 years, described seeing a tan and black firearm on the rear floorboard of the car. *See* N.T., 6/8/21, at 29. Officer Smith indicated that an extended magazine immediately drew his attention to the gun. *See id*. at 30. Officer Smith unequivocally testified about the unique appearance of the gun and magazine stating, "I could recognize the tan handle of the firearm, but the magazine was very significant as well to me. You can't hide it. It's pretty hard to miss." *Id*. at 31. When the trial court asked Officer Smith about the type of firearm, Officer Smith indicated that it was a "ghost gun." *See id*. Officer Smith explained that ghost guns are "firearms that are made of homemade parts." *Id*. Under the totality of these circumstances, including the officers' experience, the incriminating nature of the gun was immediately apparent.

Finally, turning to the third prong of the plain view doctrine, we conclude Officer Smith had a lawful right of access to the interior of Appellee's vehicle. Under the circumstances described above, Officer Smith's observation of the

unique and incriminating appearance of the gun in Appellee's car created probable cause to believe that a crime had been committed, and that evidence pertaining to the crime was present in Appellee's vehicle. Accordingly, probable cause arose suddenly and without any advance warning that Appellee or his car would be the target of a police investigation. Therefore, since Officer Smith lacked advance notice and an opportunity to obtain a warrant before commencing a search, he had a lawful right of access to the interior of Appellee's vehicle to recover the evidence. Because all three prongs of the plain view doctrine were satisfied, the seizure of the gun was constitutionally permissible, and the trial court erroneously granted Appellee's motion to suppress the evidence.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/4/2022

- 10 -