J-A03007-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH WALLACE BLACKWELL | : | |
| | : | |
| Appellant | : | No. 518 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 14, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001073-2021

BEFORE:   KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MAY 9, 2023**

Joseph Wallace Blackwell appeals from the February 14, 2022 aggregate judgment of sentence of 24 to 60 months' imprisonment, to be followed by 3 years' probation, imposed after he was found guilty in a bench trial of possession of firearm with altered manufacturer's number, firearms not to be carried without a license, possession of a controlled substance, and possession of drug paraphernalia.[1]   On appeal, Appellant challenges the denial of his **omnibus** motion to suppress physical evidence recovered during a traffic stop and the subsequent statements he made to police.   After careful review, we affirm the judgment of sentence.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6110.2(a), 6106(a)(1), 35 P.S. §§ 780-113(a)(16), and (a)(32), respectively.

The relevant facts and procedural history of this case, as gleaned from the certified record, are as follows:  On the evening of February 14, 2021, Chester Police Officer Michael Spicer was in a marked vehicle, on patrol, attired in full uniform, and traveling eastbound on the 300 block of Rose Street toward Upland Street in the City of Chester.  At this time, Officer Spicer observed a white Buick sedan proceed through an intersection without first stopping at the stop sign.  Based upon his training and experience, Officer Spicer knew the area surrounding the 300 block of Rose Street to be an area of high crime and immediately maneuvered his vehicle to directly pursue the Buick.

Officer Spicer activated his lights and sirens to initiate a traffic stop at the 1100 block off Upland Street. The Buick failed to immediately stop.  Instead, it continued to move approximately fifty feet.  During this time, Officer Spicer observed a female in the passenger seat who turned her head "a couple times" to look back at Officer Spicer.  The Buick then turned onto East 11th Street and finally came to a complete stop.  After the Buick stopped, Officer Spicer observed that the vehicle contained two occupants, the female in the front passenger seat whom Officer Spicer had previously observed looking back at him several times, and the driver.  Officer Spicer observed the driver extend his right arm over the center console area towards the female passenger "with his torso leaning over as well."

Based upon his training and experience, Officer Spicer believed that furtive movements such as the ones being made by the driver and passenger indicated an intent to conceal something in the glove box, center console, or underneath the driver or passenger seat.

Officer Spicer approached the driver, whom he identified as Appellant, and asked him to produce a driver's license, registration, and proof of insurance. Appellant failed to produce any of the requested documentation. While Officer Spicer was speaking with Appellant, he could detect a strong odor of fresh marijuana emanating from the vehicle. Officer Spicer also observed that Appellant as very nervous, that his hands were shaking, and that he was sweating. Officer Spicer found the sweating to be particularly unusual because the outside temperature was approximately 35 degrees. Officer Spicer asked Appellant whether there was any marijuana in the vehicle, to which Appellant answered in the negative. Officer Spicer then asked Appellant to exit the vehicle.

Officer Spicer performed a pat-down of Appellant and a protective search of the driver's side of the vehicle. Officer Spicer indicated that the purpose of these actions was to ensure officer safety. During the search of the driver's side, Officer Spicer discovered a black mesh bag on the floor next to the gas pedal. As Officer Spicer got closer to the bag, he could smell a strong odor of fresh marijuana. When Officer Spicer felt the bag and held it in his hands, he observed that the bag felt as though there were smaller plastic

baggies inside the bag, and that there was a soft leafy substance located within those baggies.

Officer Spicer also performed a protective search of the passenger side of the vehicle. In connection therewith, he requested that the passenger exit the vehicle. The passenger complied and threw her purse onto the hood and walked to the back of the vehicle. When her purse landed on the hood of the vehicle, the sound of the contact indicated that the bag was heavy. Officer Spicer conducted a pat-down of the passenger for officer safety. After doing so, the passenger and Appellant stood behind the vehicle with another officer. Officer Spicer then searched the vehicle's center console and found a loaded Smith and Wesson magazine.

Officer Spicer inquired of Appellant and the passenger as to the location of the firearm to which the magazine belonged. The passenger informed Officer Spicer that the firearm was inside her purse, and Officer Spicer recovered it. Appellant claimed ownership of the firearm.

During a subsequent interview at the police station with Officer Robert Shaughnessy, Appellant provided a written statement "taking full responsibility ... [for] the gun and drugs found in my car." The record reflects that Appellant was read his **Miranda**[2] warnings prior to this interview. A check

_____

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

on the status of Appellant's operating privileges also revealed that he was not currently licensed to operate a motor vehicle and that the vehicle in question was owned by Appellant's sister, Gloria Cottman. Additionally, the leafy substances found inside the black mesh bag were tested and returned positive for marijuana.

Appellant was subsequently arrested and charged with possession with intent to distribute a controlled substance, possession of firearm with altered manufacturer's number, and related offenses. On May 5, 2021, Appellant filed an **omnibus** pretrial motion to suppress both the physical evidence obtained pursuant to an "illegal warrantless search" of his vehicle and the various statements that he made to police. **See** "Omnibus Pre-trial Motion," 5/5/21 at 2. Appellant filed a supplemental motion on September 14, 2021. Notably, Appellant did not contest the validity of the traffic stop nor argue that his statements to police were in violation of his **Miranda** rights.

The suppression court held hearings on Appellant's motion on June 30, July 9, September 17, October 22, and December 7, 2021, respectively. During the course of these hearings, the suppression court heard testimony from Officer Spicer, Officer Shaughnessy, and Cottman. Following these hearings, the suppression court denied Appellant's suppression motion on December 9, 2021.

On January 21, 2022, Appellant waived his right to a jury and proceeded to a bench trial. As noted, the trial court found Appellant guilty of possession

of firearm with altered manufacturer's number, firearms not to be carried without a license, possession of a controlled substance, and possession of drug paraphernalia. On February 14, 2022, the trial court sentenced Appellant to an aggregate term of 24 to 60 months' imprisonment, to be followed by 3 years' probation. This timely appeal followed on February 16. 2022.[3]

Appellant raises the following issues for our review:

1. Did the trial court err in denying [Appellant's] motion to suppress when it determined that a protective sweep search wherein law enforcement enters a vehicle and searches the inside of the vehicle is lawful and therefore there is no requirement to obtain a search warrant pursuant to *Commonwealth v. Alexander*, 243 A3d 177 (Pa. 2020)?

2. Did the trial court err in determining that there was sufficient probable cause and exigent circumstances to enter and search [Appellant's] vehicle without [his] consent and without a valid search warrant; and whether the fervent movements of the appellant were sufficient exigent circumstances to justify a warrantless search?

3. Did the trial court err in determining that the statements made by [Appellant] without being properly advised of his rights under [*Miranda*]*,* were not in violation of the [Appellant's] constitutional rights under the 5th Amendment of the United States Constitution and Article 1 Section 8 of the Pennsylvania Constitution?

Appellant's brief at 4.

_____

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

Our standard of review in addressing a challenge to a denial of a suppression motion is well settled.

> [Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

**Commonwealth v. Jones**, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), **appeal denied**, 135 A.3d 584 (Pa. 2016).

The crux of Appellant's first two claims on appeal is that police were prohibited from conducting a warrantless search of his vehicle without first articulating sufficient probable cause and exigent circumstances to justify the search, pursuant to our Supreme Court's decision in **Alexander**. Appellant's brief at 9-39. Appellant contends this warrantless search of his vehicle violated his Fourth Amendment rights and, thus, the trial court should have granted his motion to suppress motion on this basis. **Id.** Following our careful review, we find that Appellant's reliance on **Alexander** is misplaced.

"Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals

freedom from unreasonable searches and seizures." ***Commonwealth v. Heidelberg***, 267 A.3d 492, 502 (Pa.Super. 2021) (***en banc***) (citation omitted), ***appeal denied***, 279 A.3d 38 (Pa. 2022); ***see also*** U.S. Const. amend. IV; Pa Const. art. I, § 8.

"A warrantless search or seizure of evidence is ... presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." ***Commonwealth v. Luczki***, 212 A.3d 530, 546 (Pa.Super. 2019) (citation and internal quotation marks omitted). These exceptions include "the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception, ... the stop and frisk exception, and the search incident to arrest exception." ***Commonwealth v. Smith***, 285 A.3d 328, 332 (Pa.Super. 2022) (citation omitted).

As a general rule, a warrantless search of a vehicle in Pennsylvania requires both probable cause and exigent circumstances. In ***Alexander***, the case relied upon by Appellant, our Supreme Court recently reaffirmed that that Article I, Section 8 of the Pennsylvania Constitution "requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." ***Alexander***, 243 A.3d at 181. In reaching this conclusion, the ***Alexander*** Court expressly overruled ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014), which had adopted the federal automobile exception to the warrant requirement that permitted police to conduct a

warrantless search or seizure of an automobile solely based on probable cause without any need for a separate finding of exigent circumstances. **Id.**

However, in **Michigan v. Long**, 463 U.S. 1032 (1983), the United States Supreme Court extended the principles of the protective "stop and frisk" exception articulated in the **Terry v. Ohio**, 392 U.S. 1 (1968), to the interior of an automobile, principles which are applicable to the case sub judice. In this case, **Long** was convicted of possession of marijuana found by police in the passenger compartment. **Long**, 463 U.S. at 1034-1035.

The **Long** Court held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific, and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." **Id.** at 1049 (citation and internal quotation marks omitted). The validity of a protective sweep of an automobile turns on whether "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." **Id.** at 1050. That is, whether the police officer possesses specific and articulable facts to sustain a reasonable suspicion that the person is dangerous and may gain control of a weapon.

In reaching this conclusion, the **Long** Court emphasized that a **Terry** investigation is "at close range, when the officer remains particularly

vulnerable in part because a full custodial arrest has not been effected, and the officer must make a quick decision as to how to protect himself and others from possible danger." *Id.* at 1052.

> Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in a [vehicle stop] break away from police control and retrieve a weapon from his automobile.

*Long*, 463 U.S. at 1051 (citations omitted).

The *Long* Court reasoned that the "the balancing required by *Terry* clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Id.*

Courts in this Commonwealth have continually recognized that a police officer may conduct a limited protective search of a vehicle where he possesses reasonable suspicion that the vehicle's occupant poses a risk of danger and has immediate access to weapons. *See*, *e.g. Commonwealth v. Arrington*, 233 A.3d 910, 916 (Pa.Super. 2020) (stating, "a defendant's furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and [a] nighttime stop, was sufficient to warrant a reasonable police officer to believe that his safety was in danger and that [the defendant] might gain immediate control of a weapon." (citation omitted)); *Commonwealth v. Simmons*, 17 A.3d 399,

401 (Pa.Super. 2011) (finding reasonable suspicion where the traffic stop was conducted at night, in a high-drug and high-crime area, and the officer witnessed the defendant make the furtive movement of reaching under his seat and then towards his chest, consistent with concealing a weapon), *appeal denied*, 25 A.3d 328 (Pa. 2011).

Similarly, in the instant matter, the trial court opined that Officer Spicer's limited search of Appellant's vehicle was reasonable and justified under the "protective search or wingspan search" exception to the warrant requirement. *See* trial court opinion, 5/26/22 at 15-16. As the trial court stated in its opinion,

> this Court notes the following specific and articulable facts in support of reasonable suspicion:
>
> 1. [Appellant] was in his vehicle with a passenger. Officer Spicer observed the passenger look back at him several times after Officer Spicer had signaled [Appellant] to stop.
>
> 2. [Appellant] did not stop immediately but slowed down and proceeded to turn his vehicle onto another street before stopping.
>
> 3. Thereafter, as Officer Spicer was approaching the vehicle, he observed [Appellant] making furtive movements within the vehicle. In Officer Spicer's experience, and based upon his training, he believed the movements to be consistent with an intent to conceal a weapon.
>
> 4. [Appellant] appeared extremely nervous, to the extent that his hands were shaking and he was sweating despite the fact that the outside

temperature was thirty-five (35) degrees Fahrenheit.

5.    [Appellant] could not produce his license, registration, or proof of financial responsibility.

6.    The stop occurred at night in a high crime area.

Trial court opinion, 5/26/22 at 15-16.

Upon review, we find ample evidence in the record to support the trial court's conclusion that Officer Spicer possessed reasonable suspicion that his safety was at risk and that Appellant had immediate access to a weapon. Officer Spicer specifically testified that, based upon his training and experience, that the behavior he observed in the vehicle indicated that Appellant and his passenger were potentially attempting to conceal a firearm.

Q.    Officer, you testified regarding the behavior of the passenger and the movements of the driver. Did that raise any concern at that time?

A.    It did.

Q.    And can you tell the Court what –

A.    Through my training and experience over the past couple years working as a police officer, normally, when that type of movements inside of the vehicle during a stop are initiated, it typically means that the passenger and the driver are attempting to conceal something.

. . . .

Q.    And what do you learn in that training and experience?

A.    You learn the furtive movements that the passengers and occupants of the vehicle

- 12 -

> typically make when there's a firearm on their person, and during a vehicle stop, you learn where they most likely conceal them inside of a vehicle.
>
> . . . .
>
> Q. So, this behavior that you saw from the female and the driver, why did it raise your concern?
>
> A. Because of the way the driver's -- had his body over the passenger seat, he could've been concealing something in the center console or with the passenger herself.

Notes of testimony, 6/30/21 at 14-16.

Moreover, the search of the car was restricted to those areas that Appellant and the passenger would have immediate control of and could contain a weapon. *Id.* at 20-22. Thus, the intrusion was "strictly circumscribed by the exigencies which justified its initiation." *Long*, 463 U.S. at 1051 (citation omitted).

Based on the foregoing, we find that the trial court properly concluded that Officer Spicer's limited protective search of Appellant's vehicle did not violate his rights under the 4th Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. In reaching this conclusion we note that because Officer Spicer's recovery of the evidence resulted from a lawful protective search of the vehicle, the *Alexander* decision relied on by Appellant is inapplicable. *Alexander* concerns the automobile exception to the warrant requirement, and Appellant has pointed to nothing in that holding which expressly modified "protective search or wingspan

search" exception, and we decline to do so. Accordingly, Appellant's suppression claim warrants no relief.

Appellant next argues that his oral statements to police were made in violation of his Constitutional rights to remain silent under the 5th Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution because he was not first advised of his ***Miranda*** rights. Appellant's brief at 41-45.

The record reflects that Appellant failed to raise this claim in either his May 5, 2021 suppression motion; his September 14, 2021 supplemental motion; nor at any point during the proceedings. Pennsylvania Rule of Criminal Procedure 581(D) requires that a suppression motion "state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). It is well-settled that "issues not properly raised and preserved before the trial court are waived and cannot be raised for the first time on appeal." ***Commonwealth v. Thorne***, 276 A.3d 1192, 1196 (Pa. 2022) (citation and internal quotation marks omitted); ***see also*** Pa.R.A.P. 302(a). Accordingly, Appellant has waived this claim.

For all the foregoing reasons, we affirm the trial court's February 14, 2022 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/9/2023</u>