J-A10037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ADIAN CRUZ | : | No. 703 EDA 2023 |

Appeal from the Order Entered February 10, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009127-2021

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED JULY 1, 2024**

The Commonwealth appeals from the order entered by the Philadelphia County Court of Common Pleas (the "trial court") granting the motion filed by Adian Cruz ("Cruz") to suppress evidence obtained by police during a traffic stop. The evidence in question was paper-wrapped blocks, containing several packets of controlled substances, which were located in a closed plastic bag inside an open-top Christmas gift bag. The Commonwealth argues that the trial court erred in finding that Cruz had a reasonable expectation of a privacy in the plastic bag that contained the controlled substances and that police did not observe the drugs in plain view. We affirm.

The trial court summarized the relevant factual and procedural histories of this case as follows:

> [The trial court] held a hearing on January 12, 2023, on
> [Cruz's] [m]otion to [s]uppress physical evidence recovered from

a vehicle stop. The Commonwealth called Philadelphia Police Officer Jason [Keen] to testify about his stop and search of the vehicle in which [Cruz] was a passenger. Officer [Keen] testified that on May 4, 2021, while his police car was stopped at an intersection, he and his partner saw an automobile cross the intersection. Officer [Keen] saw two men sitting in the back seat, who looked in his direction with their eyes widened, turned their heads, and simultaneously looked down towards the floor. The officers then pulled over the motor vehicle for a tag cover violation. After the officers pulled over the vehicle, its driver handed a business card to Officer [Keen, which] indicated that he worked for Shannon Cab Company, and [he] showed [the officers] his tablet computer documenting that he was currently in the process of completing a trip.

Officer [Keen] then requested [identification] from the two passengers sitting in the back seat, [Cruz] and Lamont Roundtree [("Roundtree")]. While Officer [Keen] spoke to them, Roundtree appeared to be nervous, as he was shaking, "sucking down a cigarette very fast," and "nervously biting his fingernails back and forth." [Cruz], however, did not exhibit nervous behavior. [Cruz] presented a Pennsylvania I.D. that Officer [Keen] suspected was not real based on its missing plastic layer and faded appearance. The officers decided to perform a protective sweep of the vehicle; before the search, they frisked the occupants and placed them in police vehicles. Officer [Keen] then called for another unit and several officers arrived at the scene. During the protective search, a backup officer found and alerted Officer [Keen] to the presence of a holiday, "Christmas-style" gift bag on the floor of the back seat, between where the passengers had been sitting. Officer [Keen] recalled that the first thing searched was "the area[] leading up to the bag, around the bag."

Officer [Keen] initially stated that he looked inside the gift bag and saw twenty racks of heroin. However, he later acknowledged that there was "[a] bag that was inside this gift bag, there was a white plastic bag that was knotted at the top," and that he opened that plastic bag. He did so because "[he] wanted to determine before [he] placed anybody into custody or seized any items that they are, in fact, what [he] believed them to be." Officer [Keen] testified that before he opened the plastic bag inside the gift bag and peeled back the paper of the drug packaging, he suspected the bag contained drugs and was certain that it did not contain a weapon. After Officer [Keen] determined

- 2 -

that the bag contained … heroin, the officers arrested [Cruz] and charged him with the offenses of [p]ossession with the [i]ntent to [d]eliver ("PWID")[1], [c]onspiracy[2], and [i]ntentional [p]ossession of a [c]ontrolled [s]ubstance.[3]

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S. § 903.

[3] 35 P.S. § 780-113(a)(16).

This Court issued its findings of fact and conclusions of law on February 10, 2023, granting [Cruz's] [m]otion to [s]uppress. [The trial court] concluded that [Cruz] had a reasonable expectation of privacy in the closed bag that was on the floor at his feet; that the officers lacked reasonable suspicion that the occupants were armed and dangerous, and that the protective search was therefore unjustified; and that the heroin was not reasonably identifiable to Officer [Keen] by sight or feel. Accordingly, [the trial court held that] the officer's taking and opening of the bag was an illegal search. As a result, the physical evidence seized from the bag was suppressed.

On March 10, 2023, the Commonwealth filed a [n]otice of [a]ppeal to the Superior Court from the February 10, 2023 [o]rder granting [Cruz]'s suppression motion. The [n]otice included the Commonwealth's certification that the [o]rder terminated or substantially handicapped the prosecution. On March 15, 2023, [the trial court] issued an [o]rder pursuant to Pa.R.A.P. 1925(b) for the Commonwealth to file a [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal.

Trial Court Opinion, 5/9/2023, at 1-3 (record citations omitted; officer's name corrected).

The Commonwealth presents the following question for review:

Did the [trial] court err in suppressing evidence when[:]

(a) [Cruz], a passenger in a hired rideshare vehicle where drugs were found, did not establish a reasonable expectation of privacy; and when

- 3 -

(b)    the totality of the circumstances caused police to believe that the wrapped blocks they observed in an open-topped gift bag were illegal drugs?

Commonwealth's Brief at 4.

Our review of a granted suppression motion is limited to determining "whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Carmenates*, 266 A.3d 1117, 1122-23 (Pa. Super. 2021) (en banc). "We may only consider evidence presented at the suppression hearing." *Id.* at 1123 (citation omitted). "Because the defendant prevailed on this issue before the suppression court, we consider only the defendant's evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the suppression record as a whole." *Id.*

Additionally, this Court is highly deferential to the suppression court's factual findings and credibility determinations. *Commonwealth v. Batista*, 219 A.3d 1199, 1206 (Pa. Super. 2019). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The [suppression] court is free to believe all, some or none of the evidence presented at the suppression hearing." *Carmenates*, 266 A.3d at 1123. If the record supports the suppression court's findings, we may not substitute our own findings. *Batista*, 219 A.3d at 1206. We do not, however, give such deference to the suppression court's legal conclusions and, instead, review them de novo. *Id.*

Once a defendant files a motion to suppress, "it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-48 (Pa. 2012).

The Commonwealth argues that the trial court erred in determining that Cruz had a reasonable expectation of privacy in the contents of the "open-topped Christmas-style gift bag" because the contents of the gift bag, i.e., the plastic bag that contained the drugs, were partly visible. Commonwealth's Brief at 10-12. The Commonwealth contends that the trial court wrongly equated the gift bag, and the plastic bag it contained, with a piece of luggage. ***Id.*** at 12. The Commonwealth further argues that the trial court erred in finding the police did not have probable cause to search the plastic bag because "[Officer Keen] was able to reasonably determine that the plastic bag in the open gift bag contained packages he recognized as typical of packaging of illegal drugs." ***Id.*** at 13. The Commonwealth asserts that because the gift bag was open, and the plastic bag was not totally opaque, that the drugs in the bags were "effectively in plain view." ***Id.*** at 15. The Commonwealth contends that Officer Keen did not need to know with "complete certainty" that drugs were in the plastic bag to have probable cause and that probable cause only required a "fair probability" that the officer would find contraband in the bag. ***Id.*** at 16.

"Both the Fourth Amendment [to] the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals['] freedom from unreasonable searches and seizures." **Commonwealth v. Duke**, 208 A.3d 465, 470 (Pa. Super. 2019) (citation and quotation marks omitted). "A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." **Commonwealth v. Smith**, 285 A.3d 328, 332 (Pa. Super. 2022) (quotation marks and citation omitted). "Exceptions to the warrant requirement include the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception ..., the stop and frisk exception, and the search incident to arrest exception." **Commonwealth v. Simonson**, 148 A.3d 792, 797 (Pa. Super. 2016) (quotation marks and citation omitted).

In Pennsylvania, a defendant charged with a possessory offense has "automatic standing" to pursue a suppression motion. **Commonwealth v. Enimpah**, 106 A.3d 695, 698 (Pa. 2014). "[A] defendant must show that he had a privacy interest in the place invaded or thing seized that society is prepared to recognize as reasonable." **Id.** "The expectation of privacy is an inquiry into the validity of the search or seizure itself; if the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated." **Id.** at 699.

In determining whether an individual's expectation of privacy is legitimate or reasonable, we must consider the totality of the circumstances and the determination "ultimately rests upon a balancing of the societal interests involved." ***Commonwealth v. Peterson***, 636 A.2d 615, 619 (Pa. 1993). "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances." ***Commonwealth v. Burton***, 973 A.2d 428, 435 (Pa. Super. 2009) (en banc) (citation omitted).

The plain view doctrine "allows the admission of evidence seized without a warrant when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." ***Smith***, 285 A.3d at 332. "There can be no reasonable expectation of privacy in an object that is in plain view." ***Commonwealth v. Bumbarger***, 231 A.3d 10, 20 (Pa. Super. 2020). "In determining whether the incriminating nature of an object is immediately apparent to the police officer, we look to the totality of the circumstances." ***Smith***, 285 A.3d at 333 (citation omitted). "An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause." ***Id.*** (citation omitted). Probable cause, in turn,

> requires that the facts available to the officer would warrant a man
> of reasonable caution in the belief[] that certain items may be

contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, non-technical probability that incriminating evidence is involved is all that is required.

*Id.* (citation omitted).

The record in this matter reflects that on direct examination, Officer Keen stated that he could immediately identify the contents of the open-topped gift bag as drugs: "I look inside the silver bag and I could see, it looks like there's about 20 racks of heroin or fentanyl." N.T., 1/12/2023, at 13. On cross-examination, Officer Keen clarified that the drugs were in fact inside a white, tied-off, plastic shopping bag that was inside the gift bag:

Q. Okay. And the bag that was inside this gift bag, there was a white plastic bag that was knotted at the top, correct?

A. Yes. A shopping bag.

Q. So you couldn't see into what was in that plastic bag, correct?

A. It wasn't totally opaque. I could -- I could -- I had a good sense of what was on the other side of that.

\*     \*     \*

Q. … You could see through the plastic bag?

A. I believe so, yes.

Q. Okay. And but you opened the plastic bag, correct?

A. Yes. Because I wanted to determine before I placed anybody into custody or seized any items that they are, in fact, what I believed them to be.

Q. So you thought there was drugs in there, but you weren't sure. Is that an accurate statement?

A. I observed, based on my experiences --

Q. What you recall --

A. – racks. I thought it was drugs.

Q. Okay. But you weren't sure until you opened the bag and peeled back the paper, correct?

A. Yes.

Q. Okay. And then your suspicions were confirmed. Correct? And that's when you realized it was drugs. Correct?

A. I believed it to be drugs. But I want to give everyone the benefit of the doubt. If I could peel back a piece of paper to go, okay, I was right, that's heroin.

*Id.* at 27-29.

In concluding that Cruz had reasonable expectation of privacy in the plastic bag and that the drugs were not subject to the plain view exception, the trial court explained the following in its Rule 1925(a) opinion:

> Officer [Keen] testified that the gift bag was on the floor where the back seat passengers' feet were. The location of the gift bag indicates that the bag belonged to one or both passengers; the contents were not left out in the view of the vehicle's other occupants. There was no testimony supporting a finding that the driver could access the bag, or even that he knew it was there. Officer [Keen] also testified that there was a knotted plastic bag inside the gift bag; this demonstrates that the gift bag was a closed container, the kind that would be used to store something private, and its contents were hidden. [Cruz] accordingly maintained a subjective and reasonable expectation that the contents of the gift bag would remain private.
>
> *     *     *
>
> The Commonwealth's suggestion that the wrapped blocks were in an open-topped bag is incorrect; the wrapped blocks were inside a knotted plastic bag, which was inside an open-topped bag.

- 9 -

Officer [Keen] had to open the knotted plastic bag to reveal the wrapped blocks of heroin inside it. As this [c]ourt concluded, until the plastic bag was opened, the heroin blocks were not readily identifiable by sight or by feel. Accordingly, the plain view exception does not apply.

Trial Court Opinion, 5/9/2023, at 5.

The Commonwealth argues that the gift bag should not be treated akin to luggage because it was "non-opaque," "open-topped," and its contents were "at least partly visible." Commonwealth's Brief at 12. The Commonwealth cites several cases from various other jurisdictions that state that there is no reasonable expectation of privacy in clear, translucent, or transparent plastic bags. *Id.* at 12-13. None of those cases, however, support the Commonwealth's argument, as Officer Keen did not testify that the plastic bag was clear, translucent, or transparent, but rather gave a vague statement that the bag "wasn't totally opaque." *See* N.T., 1/12/2023, at 28. Moreover, the Commonwealth's argument that the bag was "open-topped" with its contents "at least partly visible" misconstrues Officer Keen's testimony. At the suppression hearing, Officer Keen specifically testified that police found the plastic bag containing drugs inside a "Christmas-style" holiday gift bag and that the plastic bag was knotted at the top. *Id.* at 12-27. Thus, the record reflects that while the gift bag may have been open-topped, and that the plastic bag that contained drugs may have been partly visible, the drugs inside that plastic bag were not.

In further support of its claim, the Commonwealth attempts to equate the instant case to **Commonwealth v. Viall**, 890 A.2d 419 (Pa. Super. 2005). In **Viall**, police recovered drugs and drug paraphernalia from the backseat of a vehicle in which the appellant was a passenger after the driver of the vehicle consented to a search. **Id.** at 421. This Court held that "an ordinary passenger in an automobile does not by his mere presence have a legitimate expectation of privacy in the entire passenger compartment of that vehicle." **Id.** at 423. Our Court "reasoned that it would be unreasonable to maintain a subjective expectation of privacy in locations of common access to all occupants." **Id.** The Court emphasized, however, that "passengers in an automobile may maintain a reasonable expectation of privacy in the contents of luggage they placed inside an automobile." **Id.** Ultimately, in **Viall**, this Court concluded that "the drugs and drug paraphernalia were recovered from a common area in the backseat of the vehicle" and "that it would be unreasonable for [the appellant] to have expected to maintain a privacy interest in objects which were placed inside the car and not shielded from the view of the many others occupying the same small space." **Id.**

This case is readily distinguishable from **Viall** in several key aspects. In this case, unlike **Viall**, the driver of the vehicle did not consent to a search of the vehicle. **See** N.T., 1/12/2023, at 12. Additionally, unlike **Viall**, police did not recover drugs that were sitting out in the open in the backseat of the car; rather Officer Keen recovered the drugs from a tied-off plastic bag that was

inside a Christmas gift bag, which was situated at Cruz's feet. **See id.** at 12-14.

Based on the foregoing, the record supports trial court's finding that Cruz intended to keep the contents of the plastic bag, which was tied off and sitting inside a Christmas-style gift bag, private. **See Carmenates**, 266 A.3d at 1122-23. We therefore conclude that the trial court did not err in determining that Cruz possessed a reasonable expectation of privacy in the plastic bag. **See Commonwealth v. Sell**, 470 A.2d 457, 468 (Pa. 1983) ("So long as a person seeks to preserve his effects as private, even if they are accessible to others, they are constitutionally protected.").

The record further supports the trial court's findings that the drugs were not readily identifiable by sight, that Officer Keen wavered on whether he knew the plastic bag contained drugs, and that consequently, Officer Keen did not possess any knowledge, beyond a hunch, that there was contraband inside the plastic bag. **See Carmenates**, 266 A.3d at 1122-23. Accordingly, we conclude that the trial court likewise did not err in determining that the drugs were not in plain view and Officer Keen did not have probable cause to search the contents of the plastic bag.

Order affirmed.

President Judge Lazarus joins the memorandum.

President Judge Emeritus Panella files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/1/2024