J-E03002-24                    2025 PA Super 128

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
SAQUANA TAWANE LAYER : No. 1489 MDA 2022

Appeal from the Order Entered October 13, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005925-2021

BEFORE:  LAZARUS, P.J., BOWES, J., OLSON, J., KUNSELMAN, J., NICHOLS,
J., MURRAY, J., KING, J., BECK, J., and LANE, J.

DISSENTING OPINION BY BOWES, J.:                **FILED: JUNE 25, 2025**

I agree with my learned colleagues that the police officers in this matter were justified in performing a protective sweep of the upper floor of the house. However, I find that the Majority misapplies the law pertinent to plain view as it relates to protective sweeps, and therefore erroneously affirms the trial court's order granting suppression.  As such, I respectfully dissent.

The Majority accurately and cogently recites the background of this case, so I need not repeat it at length.  I would only recount that after beginning the process of arresting Hightower on the front porch of the residence, officers performed a protective sweep of the upstairs master bedroom of the house.  The door to the bedroom could not be fully opened so as to be flush with the wall, since the dresser in question was behind it.  ***See*** Defendant's Hearing Exhibit 6.  Therefore, to ascertain whether someone was hiding in the corner of the room behind the door, Officer Fouad was required

to step into the room and partially pull the door closed so that he could look behind it. **See** N.T. Suppression Hearing, 4/8/22, at 54, 60, 63-64. As he did so, the top of the dresser was immediately present before him, in plain view and close proximity. **Id**. at 81 (Officer Fouad testifying that the top of the dresser was about the same height as his shoulders). From his vantage point, without manipulation of any items, he saw (1) loose marijuana, (2) a box of clear sandwich baggies, and (3) a stack of large resealable packets containing cartoon depictions of anthropomorphic fruit, with bloodshot eyes, smoking marijuana cigarettes. The bundle of resealable packets sat on the corner of the dresser next to the hinge of the bedroom door, closest in point to where any reasonable officer would look to see if someone was hiding behind the door. **See** Majority Opinion, Appendix A (Defendant's Hearing Exhibit 4). The bits of marijuana leaf, while not particularly large, appeared vibrant yellow in color and were close to the other contraband in the center of the dresser. **Id**. (Defendant's Hearing Exhibit 5).

I next reiterate the salient legal principles. If supported by the certified record, we are bound by a suppression court's findings of fact. **See Commonwealth v. Ross**, 297 A.3d 787, 791 (Pa.Super. 2023) (citation omitted). "The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." **Id**. (citation omitted).

It is well-settled that, since "[t]here can be no reasonable expectation of privacy in an object that is in plain view," there is no constitutional violation

for "the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." ***Commonwealth v. Heidelberg***, 267 A.3d 492, 504 (Pa.Super. 2022) (*en banc*) (cleaned up). "To judge whether the incriminating nature of an object was immediately apparent to the police officer, **reviewing courts must consider the totality of the circumstances**. In viewing the totality of the circumstances, the officer's training and experience should be considered." ***Id***. (cleaned up, emphasis added).

This Court has defined a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." ***Commonwealth v. Potts***, 73 A.3d 1275, 1282 (Pa.Super. 2013). Consistent with that purpose, we have stated that a search for persons "cannot be lengthy or unduly disruptive." ***Commonwealth v. Crouse***, 729 A.2d 588, 598 (Pa.Super. 1999). Nonetheless, an officer conducting this search is not required to avert his gaze from contraband visible from his lawful vantage point. ***See Potts***, 73 A.3d at 1282 (concluding that "officers were not required to ignore the marijuana they saw in [the a]ppellant's bedroom while conducting [a protective] sweep").

My colleagues and I agree that since the protective sweep was proper, there is no dispute that Officer Fouad was in a "legal vantage point" when he saw the alleged contraband, and thus the first prong of plain view is satisfied. ***See Heidelberg***, 267 A.3d at 504. Nonetheless, in affirming the trial court,

- 3 -

the Majority maintains that "the search of the top of the dresser exceeded the scope of a quick, cursory inspection for harmful items." Majority Opinion at 18. It first asserts that there was insufficient evidence as to the incriminating nature of the packing materials and marijuana flakes observed by Officer Fouad. *Id*. at 20. The Majority specifically finds that the officer "did not identify any incriminating characteristics of the *de minimis* specks pictured on top of the dresser," and further appears to deem inadequate the officer's assertion that the foil bags and sandwich baggies were used as drug packaging materials without additional explanation. *Id*. Thus, it concludes that the Commonwealth did not meet its burden of demonstrating that it was "immediately apparent" to the officer that any of the objects were incriminating, which is the second prong required to establish plain view. *See Heidelberg*, 267 A.3d at 504.

I, however, find the incriminating nature of the items observed on top of the dresser to be readily apparent to a layperson, let alone a trained police officer. To begin, the rubber-banded stack of large gelato foil bags did not merely state "Lemon Cherry Gelato" on them with no indication of potential purpose. Instead, as can be seen within Appendix A of the Majority opinion, the packaging depicts in bright, vibrant colors cherry and lemon cartoon characters holding lit marijuana cigarettes. Both of the fruits in question have bloodshot eyes and are grinning. Officer Fouad observed the stack within inches of a box of clear sandwich baggies and marijuana detritus. He testified

that based on his training and experience, these items are used as "packaging for weed, for marijuana."[1]  N.T. Suppression Hearing, 4/8/22, at 65.

From these uncontroverted facts, I cannot agree with my learned colleagues or the trial court that the officer exceeded the scope of the sweep by observing these items.  The evidence does not suggest that he engaged in any "lengthy or unduly disruptive" search while performing the sweep.  ***See Crouse***, 729 A.2d at 598.  Nor is there any support for the contention that Officer Fouad's observations entailed closely looking at the dresser in a way that exceeded the scope of the protective sweep.  With respect to the resealable foil bags, these were not small packages that would require any prolonged viewing to see.  Indeed, they are strikingly colorful and substantially larger than the wallet upon which they were partially stacked.  ***See*** Majority Opinion, Appendix A (Defendant's Hearing Exhibit 4).  Concerning the loose marijuana, while certain photographs of the dresser from a distance made it difficult to discern the specks, Officer Fouad was clear in his testimony that his point of view at the time of the sweep was not as far away as the perspective in most of the photos.  Rather, he was close to the dresser, the top of which was roughly at shoulder height.  ***See*** N.T. Suppression Hearing, 4/8/22, at 66, 81.

---

[1] In its substituted brief, the Commonwealth does not contest the trial court's finding that Officer Fouad was incredible with respect to observing cash in the partially open top dresser drawer.  ***See*** Commonwealth's substituted brief at 10 n.1.  Based on this, and consistent with the Majority's analysis as to that issue, I do not factor this piece of evidence in considering whether the ensuing search warrant was adequate.

To the extent the Majority's holding suggests that items of a certain small size must necessarily be excluded if seen during a protective sweep, despite actually being observed, I find no basis for that in the law. In considering if an officer exceeded the scope of a protective sweep, the question is whether any search was "lengthy or unduly disruptive" or potentially within areas outside of "living spaces." *See Crouse*, 729 A.2d at 598. Excessiveness does not hinge on the dimensions of the object being observed, but rather the impropriety of the officer's actions. I believe that the Majority's interpretation of the plain-view doctrine would unreasonably require a police officer who sees drug-packing items in plain view to close his eyes and disregard other incriminating items nearby simply because of their size, despite a dearth of evidence of a lengthy search. I cannot countenance such a restrictive interpretation.

As an additional part of its decision, the Majority makes it a point to assert that the resealable bags and box of sandwich baggies are not illegal to own, and thus their presence on a bedroom dresser did not offer justification for the subsequently obtained search warrant. *See* Majority Opinion at 19-20 (relying on *Crouse*). While it is true that one may legally possess those items, that is not dispositive. Instead, the issue is whether the objects on the dresser **collectively** were immediately incriminating.

My reading of *Crouse* supports this notion and, in my opinion, undermines the Majority's position. In *Crouse*, state police performed a protective sweep of a bedroom while executing an arrest warrant. While

scanning a bedroom for weapons, a trooper "saw a smoking pipe in plain view on the night stand" and seized it. **See Crouse**, 729 A.2d at 591. In the opinion denying Crouse's motion to suppress, the trial court described the contraband as a "marijuana pipe." **Id**. On appeal after conviction, this Court concluded that the sweep did not violate Crouse's rights and affirmed the finding that the pipe was in plain view. **Id**. at 593; **id**. at 598 ("Moreover, the . . . sweep of the second-floor area was limited to 'living spaces.' There is no evidence of record that either the scope or duration of the search was excessive.").

As in **Crouse**, Officer Fouad performed a protective sweep of a bedroom while executing an arrest warrant. Even assuming, *arguendo*, that he did not see the marijuana flakes, he did observe immediately apparent drug paraphernalia, in this case the large, colorful foil bags and a box of clear sandwich baggies. These items are not illegal to own, as my learned colleagues highlight, but neither was the smoking pipe possessed by Crouse and seized during that sweep. The illegality of possessing the pipe arose from its alleged illegal **use**, not its inherent nature. **See**, **e.g.**, **In re Firearms, Eleven**, 922 A.2d 906, 910 (Pa.Super. 2007) ("Derivative contraband is property innocent by itself, but used in the perpetration of an unlawful act." (citation omitted)).

As this Court has repeated, "even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Commonwealth v. Metz**, 332 A.3d 92, 98-99 (Pa.Super. 2025) (citing

*Commonwealth v. Rogers*, 849 A.2d 1185 (Pa. 2004)). Here, the proximity of the marijuana detritus and the stack of foil bags and clear sandwich baggies clearly revealed the incriminating nature of these objects. Stated another way, no further investigation was required because the marijuana flakes were in plain view right beside the legal bags and packages, with each reinforcing the nature of the other as furthering an illicit purpose. It is irrelevant that the bags themselves were lawful to own, and it is not dispositive if the marijuana flakes, had they been observed by themselves, were not immediately identifiable as incriminating. Therefore, in the same way this Court upheld the seizure of the smoking pipe in *Crouse*, I believe we likewise must find that Officer Fouad properly and immediately ascertained the incriminating nature of the items on the dresser, without an excessive search.[2]

In its next reason for affirmance, the Majority contends that the search was outside the bounds of plain view during a protective sweep because there was a lack of testimony relating to Officer Fouad's training and experience to link the items to drugs or contraband. **See** Majority Opinion at 20-22. Specifically, my esteemed colleagues state that "the Commonwealth failed to

_____

[2] Along that same line, I have no trouble concluding that the Commonwealth satisfied the third prong of plain view, concerning the officer's lawful right to access the item. This is due to Officer Fouad's unexpectedly seeing the purported contraband from a legal vantage point after Hightower's arrest, and the contraband's incriminating nature being immediately apparent to him. **See**, **e.g.**, **Commonwealth v. Smith**, 285 A.3d 328, 333 (Pa.Super. 2022) ("Where police officers observe incriminating-looking contraband in plain view . . . from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question.").

establish how it was immediately apparent to Officer Fouad that the barely visible specks were marijuana and that the gelato foil bags were drug packaging materials based on the officer's police training." *Id*. at 21. In so doing, the Court relies upon, *inter alia,* **Commonwealth v. Randolph**, 151 A.3d 170, 184 (Pa.Super. 2016) (holding that an officer's bare "claim of 'knowledge and experience' was an empty phrase that failed to tilt the scales toward probable cause" (citation omitted)).

I find this position unavailing because, regardless of the record testimony as to Officer Fouad's training and experience, none of it is necessary for a finding of probable cause supporting plain view. Our High Court specifically elucidated that such evidence is merely **one factor** to be considered under the circumstances. **See Commonwealth v. Thompson**, 985 A.2d 928, 935-36 (Pa. 2009) (considering whether external factors, beyond the officer's training and experience, supported the notion of probable cause, including time of day of the seizure, the location, and the fact that the search was to be conducted in an area that was considered to be high crime). As we acknowledged in **Randolph**, "because experience is only 'a relevant factor,' there may be occasions where [it] is not critical to the probable cause calculus." **Randolph**, 151 A.3d at 185. Accordingly, it is just one component of the "totality of the circumstances" this Court is required to consider in assessing plain view and the officer's determination of whether an object is incriminating. **See Heidelberg**, 267 A.3d at 504.

Moreover, there was more than a bald assertion of Officer Fouad's training and experience in this case. While I do not dispute that testimony concerning this topic during the suppression hearing was relatively scant, I note that there was more information included in the affidavit of probable cause contained within the record. *See* Commonwealth's Hearing Exhibit 1. Therein, the officer noted that, in addition to his three years as a police officer, he was sworn as a county detective and served as a member of the unit responsible for investigating gun violence in high crime areas. *See* Application for Search Warrant and Authorization, 11/3/21, at unnumbered 3. The affidavit also stated: "It is common in this officer's training and knowledge that those involved in drug sales store additional quantities of drugs, proceeds of drug sales, [and] firearms to protect themselves in the course of their illicit trade." *Id*. Accordingly, I would find this evidence to be more than the bald "claim of knowledge and experience" equivalent to the "empty phrase" that has been discounted in the past by this Court. *See Randolph*, 151 A.3d at 184.

I also find this case to be distinguishable from *Randolph*, relied upon by my colleagues. There, the officers in question obtained a search warrant to search a box welded to the undercarriage of a pickup truck. The trial court granted suppression of the items found therein. This Court affirmed, concluding that the Commonwealth failed to establish a sufficient nexus between the officer's experience and his suspicion that there would be drugs and weapons inside the box, particularly when a police K-9 did not alert while

sniffing that general area of the truck. In particular, we emphasized the lack of testimony connecting the officer's training and experience to the welded box being searched. We also noted that no other external factors worked to establish probable cause. *Randolph*, 151 A.3d at 184 (discussing how the Commonwealth asserted "an unusual set of circumstances, but not enough for a search warrant, because they did not create a 'fair probability' that contraband or evidence of crime would be found inside the hidden compartment").

There is a critical difference between *Randolph* and this matter. The welded box, though uncommon, did not have any of the inherent indicia of containing contraband or weapons. It was simply an unmarked container. In the case *sub judice*, however, the foil baggies, box of sandwich baggies, and specks of marijuana were all indicative of drug trafficking, especially when considering that they were located in close proximity in a bedroom of a house where Hightower had been hiding to elude arrest under an active warrant. Unlike in *Randolph*, Officer Fouad's observations of the items atop the dresser created a "fair probability" that other contraband or evidence of drug trafficking would be located within the household, thus supporting the search warrant. *Id*.

In sum, I would hold that Officer Fouad's observation of the marijuana and packing materials on the dresser while he was performing a protective sweep was proper under the plain-view doctrine and, consequently, the

evidence obtained from execution of the search warrant was not excludable as fruit of the poisonous tree.[3]

Since I find that the trial court erred in suppressing the items ultimately seized from the residence, I must dissent.

Judge Olson, Judge King, and Judge Beck join this Dissenting Opinion.

_____

[3] This would include the vehicle key fob suppressed by the trial court in co-defendant Hightower's case, which was seized while law enforcement executed the initial search warrant herein. As the Majority rightfully acknowledges, "the issue of the legality of the [subsequent] warrants is controlled by this Court's disposition of the arguments concerning the protective sweep and plain view doctrine." **See** Majority Opinion at 5 n.2.