J-S46043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM EDWARD MCIVER JR. | : | |
| | : | |
| Appellant | : | No. 1118 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 20, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0003347-2022

BEFORE: LAZARUS, P.J., BOWES, J., and KING, J.

MEMORANDUM BY KING, J.:           **FILED: APRIL 14, 2025**

Appellant, William Edward McIver, Jr., appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his bench trial conviction for three counts of possession with intent to deliver ("PWID") and possession of a controlled substance, and one count each of persons not to possess a firearm, firearms not to be carried without a license, possession of marijuana, and improper sun screening.[1]  We affirm in part, vacate in part, and remand for further proceedings.

The relevant facts and procedural history of this case are as follows.  On March 27, 2022, McKeesport Police Officers Joshua Byers and Anthony LeDonne were on routine patrol together in McKeesport, Pennsylvania.  They

---

[1] 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 35 P.S. § 780-113(a)(31), and 75 Pa.C.S.A. § 4524(e)(1), respectively.

observed a Chrysler 300 vehicle with heavily tinted side and rear windows and activated their overhead lights. Appellant immediately pulled over to the side of the road. As the officers approached, Officer LeDonne requested that Appellant roll the windows down. Appellant complied, and Officer LeDonne asked him to produce his license, registration, and proof of insurance.

As Appellant opened the center console of the vehicle to look for the requested materials, Officer Byers observed hundreds of filled stamp bags of the type used to package narcotics, usually, heroin or fentanyl. When Appellant noticed Officer Byers' attention, Appellant looked away and closed the console. Officer Byers asked Appellant to step out of the vehicle towards Officer LeDonne. The officers then placed Appellant under arrest for possession of narcotics.

Officer Byers went back into the car to retrieve the narcotics, and the officers secured Appellant's vehicle. They obtained a search warrant for the vehicle and, during the subsequent search, recovered a firearm inside a tan Gucci bag, and three small bags of marijuana, on the rear floor behind the passenger seat.

On August 30, 2022, Appellant filed a motion to suppress the evidence recovered from his vehicle, arguing that the "plain view" doctrine had not been established. Following suppression hearings on October 24, 2022, November 1, 2022, and December 12, 2022, the trial court denied the motion on December 12, 2022. On March 17, 2023, the matter proceeded to a bench trial, and the trial court convicted Appellant of the above-mentioned charges.

On June 16, 2023, Appellant filed a pre-sentence motion for extraordinary relief, challenging the sufficiency of the evidence to support his convictions, and arguing that 18 Pa.C.S.A. § 6105 was unconstitutional as applied to him. The court deferred ruling on the motion until after sentencing.

On July 20, 2023, the court sentenced Appellant to an aggregate term of 8 to 16 years of incarceration. On July 31, 2023, Appellant timely filed a post-sentence motion, again challenging the sufficiency of the evidence and the constitutionality of Section 6105. On August 17, 2023, the court heard oral argument on the motion and denied the motion that same day. Additionally, the court denied Appellant's pre-sentence motion for extraordinary relief.

On September 15, 2023, Appellant timely filed a notice of appeal. That same day, the court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely complied.

On appeal, Appellant raises the following issues for our review:

> I. Whether the trial court erred in denying [Appellant's] motion to suppress?
>
> II. Whether the trial court erred in concluding that 18 Pa.C.S.A. § 6105 (Persons Not to Possess Firearms) does not violate the Second and Fourteenth Amendments of the United States Constitution?

(Appellant's Brief at 7).

In his first issue, Appellant argues that the trial court should have granted his suppression motion pursuant to *Commonwealth v. Alexander*, 664 Pa. 145, 243 A.3d 177 (2020), which reiterated that the Pennsylvania

Constitution requires a showing of both probable cause and exigent circumstances to justify the warrantless search of an automobile. Appellant disputes the trial court's finding that police lawfully seized the drugs inside the vehicle pursuant to the plain view doctrine. Appellant also complains that police did not have the lawful right of access to the object required to satisfy the plain view doctrine. Further, Appellant suggests that because he was already in police custody and incapable of destroying the evidence, there was no exigency. On this basis, Appellant maintains that the search warrant subsequently issued was based on information that was illegally obtained and did not establish probable cause, such that the gun should have been suppressed.

Appellant admits that pursuant to this Court's decision in *Commonwealth v. Smith*, 285 A.3d 328 (Pa.Super. 2022) (holding that *Alexander* does not need to be applied where circumstances permit application of plain view exception), the court properly denied his suppression motion. Nevertheless, Appellant maintains that *Smith* was wrongfully decided and should be revisited by an *en banc* panel of this Court, or the Pennsylvania Supreme Court. Appellant concludes that suppression was required under the facts of this case, and this Court should grant relief. We disagree.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from

those facts are correct." ***Commonwealth v. Williams***, 941 A.2d 14, 26 (Pa.Super. 2008) (*en banc*) (internal citations omitted).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

***Id.*** at 27. The reviewing court's scope of review is limited to the evidentiary record of the pre-trial hearing on the suppression motion. ***In re L.J.***, 622 Pa. 126, 79 A.3d 1073 (2013). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Luczki***, 212 A.3d 530, 542 (Pa.Super. 2019) (quoting ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa.Super. 2013)). If appellate review of the suppression court's decision "turns on allegations of legal error," then the trial court's legal conclusions are nonbinding on appeal and subject to plenary review. ***Commonwealth v. Jones***, 121 A.3d 524, 526-27 (Pa.Super. 2015), *appeal denied*, 635 Pa. 750, 135 A.3d 584 (2016).

"[T]he Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures and, to that end, a search conducted without a warrant is generally presumed unreasonable unless it is undertaken pursuant to a recognized exception to the warrant requirement." ***Commonwealth v.***

***Lechner***, 685 A.2d 1014, 1016 (Pa.Super. 1996).

"The 'plain view' doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable[.]" ***Commonwealth v. McCree***, 592 Pa. 238, 247, 924 A.2d 621, 627 (2007) (quoting ***Horton v. California***, 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112, 120 (1990)). "The plain view doctrine provides that evidence in plain view of the police can be seized without a warrant[.]" ***Commonwealth v. Anderson***, 40 A.3d 1245, 1248 (Pa.Super. 2012), *appeal denied*, 616 Pa. 666, 51 A.3d 837 (2012).

> This doctrine permits a valid warrantless seizure of an item where: (1) the police have not violated the Fourth Amendment in arriving at the location from which the item could be viewed; (2) the item is in plain view; (3) the incriminating character of the item is immediately apparent; and (4) the police have a lawful right of access to the item itself.

***Commonwealth v. Jones***, 605 Pa. 188, 201, 988 A.2d 649, 656 (2010), *cert. denied*, 562 U.S. 832, 131 S.Ct. 110, 178 L.Ed.2d 32 (2010). ***See also Commonwealth v. Miller***, 56 A.3d 424, 429 (Pa.Super. 2012) (stating plain view doctrine permits warrantless seizure of object when officer views object from lawful vantage point, it is immediately apparent that object is incriminating, and officer has lawful right of access to object).[2]

_____

[2] In ***Alexander***, our Supreme Court reaffirmed that "the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." ***Alexander, supra*** at 151, 243 A.3d at 181. However, "where the circumstances permit
*(Footnote Continued Next Page)*

Significantly: "There can be no reasonable expectation of privacy in an object that is in plain view. To judge whether the incriminating nature of an object was immediately apparent to the police officer, reviewing courts must consider the totality of the circumstances." **Commonwealth v. Colon**, 777 A.2d 1097, 1103 (Pa.Super. 2001) (quoting **Commonwealth v. Petroll**, 558 Pa. 565, 738 A.2d 993 (1999)). "In viewing the totality of the circumstances, the officer's training and experience should be considered." **Miller, supra** at 430 (citing **Commonwealth v. Liddie**, 21 A.3d 229 (Pa.Super. 2011) (*en banc*)). "[T]here is no reason [a police officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen." **Colon, supra** at 1103. **See also Smith, supra** (noting that where police officers observe incriminating-looking contraband in plain view in vehicle from lawful vantage point, lack of advance notice and opportunity to obtain warrant provides officers with lawful right of access to seize objects in question). Further, the plain view doctrine is concerned with the "seizure of evidence rather than a search without a warrant." **Id. See also Commonwealth v. Kendrick**, 490 A.2d 923, 927 (Pa.Super. 1985) (explaining seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming there is probable cause to associate property with criminal activity; experienced officer trained in

---

an application of the plain view exception, we need not apply **Alexander**." **Smith, supra** at 332 (quoting **Commonwealth v. McMahon**, 280 A.3d 1069, 1074 (Pa.Super. 2022)).

narcotics can seize object, when he observes it from lawful vantage point, and holder of object tries to conceal object; given incriminating character of object, officer could open object and examine contents).

Instantly, the trial court explained:

> Officer Byers viewed the heroin/fentanyl from a lawful vantage point. He was on routine patrol and he was conducting a valid traffic stop to investigate illegal tint on the windows of [Appellant's] vehicle. He was standing outside [Appellant's] vehicle while effecting the traffic stop. He viewed the narcotics from a lawful vantage point.
>
> The incriminating nature of the heroin/fentanyl was immediately apparent to Officer Byers. Officer Byers had extensive experience making narcotics arrests. He testified that he had made "hundreds" of narcotics arrests. He noticed that the narcotics were packaged in glassine bags and were grouped in "bricks," a common form of packaging for heroin and fentanyl…. In this case, the totality of the circumstances indicated that Officer Byers immediately recognized the incriminating nature of the narcotics. Because he personally observed the narcotics in plain view, he had a lawful right to access the narcotics. In this [c]ourt's view, the warrantless search and seizure was justified.
>
> [Appellant] next claims that the gun and marijuana should have been suppressed because the information relied upon to form probable cause to issue the warrant (the seizure of heroin/fentanyl) was illegally obtained. As this [c]ourt has determined above that the [narcotics] were lawfully obtained, information concerning [the] seizure was properly included in the affidavit filed in support of the search warrant.

(Trial Court Opinion, 1/17/24, at 4-5).

The record supports the trial court's conclusions. Here, Appellant appears to dispute only the lawful right of access by the police to the objects

under the plain view doctrine. Nevertheless, Appellant has provided no authority to support his position that, because the officers viewed the contraband prior to entering the vehicle, they lacked lawful access. On the contrary, the plain view doctrine makes clear that officers viewing obvious contraband from a lawful access point, and the lack of advance notice and opportunity to obtain a warrant, equips officers with a lawful right of access to seize those objects. ***See Smith, supra***. Despite Appellant's arguments to the contrary, he has provided no compelling reason to refer this case to an *en banc* panel to revisit **Smith**. Thus, Appellant's first issue merits no relief.

In Appellant's second issue, he argues that his conviction for persons not to possess firearms[3] must be overturned pursuant to **New York State**

---

[3] The Crimes Code provides, in relevant part:

> **§ 6105. Persons not to possess, use, manufacture, control, sell, or transfer firearms**
>
> **(a) Offense defined.—**
>
> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.
>
> \* \* \*
>
> **(c) Other persons.—**In addition to any person who has been convicted of any offense listed under subsection (b),

*(Footnote Continued Next Page)*

*Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022) (rejecting use of means-end scrutiny in Second Amendment context and instead holding that, when Second Amendment's plain text covers individual's conduct, Constitution presumptively protects that conduct, and government must then justify regulation by demonstrating that it is consistent with Nation's historical tradition of firearm regulation). According to Appellant, Section 6105 violates the Second and Fourteenth Amendments of the United States Constitution. Appellant does not explain in what manner Section 6105 violates these sections of the Constitution.

Rather, Appellant begins by accurately summarizing the holding in *Bruen*, namely, that for firearms regulations to pass constitutional muster a court must determine first, whether an individual is part of "the people" protected by the Second Amendment; and second, whether the plain text of the Second Amendment protects the individual's proposed conduct such that the Constitution presumptively protects it, and if so, whether the government

---

the following persons shall be subject to the prohibition of subsection (a):

\* \* \*

(2) A person who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, that may be punishable by a term of imprisonment exceeding two years.

18 Pa.C.S.A. § 6105.

has demonstrated that the regulation is consistent with this Nation's historical tradition of firearm regulation. Appellant also references ***Commonwealth v. McIntyre***, 314 A.3d 828 (Pa.Super. 2024), *appeal granted*, No. 268 MAL 2024 (Pa. filed November 26, 2024) (***McIntyre I***), wherein this Court considered a facial challenge to the constitutionality of Section 6105, and held that Section 6105, in light of ***Bruen***, does not violate the Second Amendment. Therefore, Appellant acknowledges that his federal constitutional challenge must be rejected but maintains that ***McIntyre I*** was wrongfully decided. Notably, Appellant does not explain **why** he believes ***McIntyre I*** was wrongfully decided or cite any relevant law in support of this claim.[4]

In response, the Commonwealth argues that, in ***McIntyre I***, this Court expressly held that Section 6105 does not violate the Second Amendment of the United States Constitution, and that convicted felons are not among "the people" who have a right to bear arms. The Commonwealth states that because ***McIntyre I*** is binding authority, the Commonwealth would save further argument defending that holding for *en banc* or further appellate review.[5]

---

[4] Arguably, we could deem Appellant's second issue waived on appeal for lack of proper development.

[5] The Commonwealth also suggests that Appellant has waived his second issue on appeal because it was raised for the first time in his pre-sentence motion for extraordinary relief, and presented an as-applied challenge based upon the Third Circuit's decision in ***Range v. Attorney Gen. United States of Am.***, 69 F.4th 96 (3d Cir. 2023). The Commonwealth argues that ***Range*** does not

*(Footnote Continued Next Page)*

Significantly, we observe that on June 21, 2024, during the pendency of this appeal, the United States Supreme Court decided **United States v. Rahimi**, 602 U.S. 680, 144 S.Ct. 1889, 219 L.Ed.2d 351 (2024), which considered a Second Amendment challenge to a federal statute forbidding possession of a firearm to a person subject to a domestic violence order. **See Rahimi, supra** at 684, 144 S.Ct. at 1894. The statute in question included the requirement that the court make a finding that the person represents a credible threat to the physical safety of the person's intimate partner.[6] **See Rahimi, supra** at 690, 144 S.Ct. at 1896-97. Applying the **Bruen** framework, the **Rahimi** Court held that since its founding, this Nation's firearm laws have included regulations to stop individuals who threaten physical harm to others from misusing firearms and, as applied to the facts of the case, the challenged regulation fit within that tradition. **See id.** at 694-702, 144 S.Ct. at 1898-1902. Accordingly, the Court held that the statute was neither unconstitutional on its face, nor as applied to Rahimi himself. **See id.**

Thereafter, on November 26, 2024, the Pennsylvania Supreme Court granted allowance of appeal in **McIntyre I**, vacated this Court's decision that had affirmed the trial court's judgment of sentence, and remanded the matter

---

apply because it concerns a federal statute that is not on point. We reject this argument; as the relevant cases in this area which we discuss **infra** make clear, the reasoning applied to federal statutes is also persuasive in state matters if the statutes are substantially similar.

[6] **See** 18 U.S.C.A. § 922(g)(8).

to this Court to apply **Rahimi**. Therefore, this Court's decision in **McIntyre I**, which both parties cite to on appeal, is no longer controlling authority.

Following remand, this Court issued **Commonwealth v. McIntyre**, 2025 PA Super 56 (Pa.Super. filed Mar. 10, 2025) (**McIntyre II**), again concluding that neither **Bruen** nor **Rahimi** compel the conclusion that Section 6105 is unconstitutional on its face. **McIntyre II, supra** at 2, 20-23. This Court noted that, in **District of Columbia v. Heller**, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the Supreme Court held that the Second Amendment confers an individual right on law-abiding citizens to keep and bear arms for self-defense, unconnected with service in the militia, but the decision "should [not] be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ...., [which are] presumptively lawful regulatory measures." **Heller, supra** at 595, 128 S.Ct. at 2799. This Court further explained that **Bruen**, which relied on **Heller**, also reinforced that the decision applied to law-abiding citizens. **See id.** at 17-20 (citing **Bruen, supra** at 71, 142 S.Ct. at 2111). Ultimately, relying on the above, this Court concluded that convicted violent felons are not "the people" who have a right to possess arms under the Second Amendment, negating the necessity to examine whether Section 6105 is consistent with this Nation's history of firearm regulation. **See McIntyre II** at 20-21. Accordingly, we conclude that Appellant's facial challenge to the constitutionality of Section 6105 fails based on the precedent set forth above.

This Court has also interpreted **Rahimi** in an "as-applied" context. In

*Commonwealth v. Farmer*, 329 A.3d 449 (Pa.Super. 2024), the defendant, who had a prior robbery conviction, was convicted of persons not to possess firearms and challenged the constitutionality of Section 6105 in his post-sentence motion. The trial court denied the post-sentence motion, and this Court affirmed the judgment of sentence. *See id.*

In doing so, this Court held: 1) the statute implicated conduct protected under the Second Amendmentment because it deprives some of "the people" of their right to bear arms, but 2) the statute was consistent with this Nation's historical tradition of firearm regulations prohibiting the use of dangerous weapons to terrify people. *See id.* at 455-458. Specifically, this Court pointed to common law "going armed" laws which "prohibited the use of dangerous weapons to terrify people and imposed forfeiture of weaponry as a punishment." *Id.* at 458. This Court further explained that robbery at gunpoint, a crime of violence, was sufficient to cause such terror. *Id.* Therefore, concluding that Section 6105 was similar to the federal statute at issue in *Rahimi*, this Court held that Section 6105 was not unconstitutional as applied to the defendant. *Id.*[7]

Instantly, the record reflects that, at the time of his arrest for the charges in this case, Appellant was on probation for a prior felony conviction

---

[7] Additionally, we note that, following the *Rahimi, McIntyre I* and *II*, and *Farmer* decisions, neither the Commonwealth nor Appellant requested the opportunity for supplemental briefing to discuss the impact of those decisions. *See* Pa.R.A.P. 2501(a) (governing requests for post-submission communications).

for PWID, which disqualified him from possessing a firearm under Section 6105. (*See* N.T. Trial, 4/17/23, at 7-8; N.T. Sentencing, 7/20/23, at 21). We note that the trial court opinion further indicates that Appellant is "a violent felon with a lengthy criminal history." (Trial Court Opinion, 1/17/24, at 10). The court goes on to observe that "as an adult" Appellant had been convicted of a "third-degree felony under Pennsylvania law—carrying a firearm without a license," and had "multiple prior felony drug convictions, multiple misdemeanor assault and terroristic threats convictions and a prior conviction for resisting arrest." (*See id.*) Nevertheless, the record does not contain the pre-sentence investigation report, and this Court cannot determine from the record whether the trial court's statements concerning Appellant's criminal history are accurate. Consequently, based on the record before us which only confirms Appellant's prior conviction for PWID, we cannot determine whether Section 6105 is unconstitutional as applied to Appellant, because it is unclear whether he has a criminal history which "poses a threat of violence."[8]

---

[8] This Court has also recently decided **Commonwealth v. Anderson**, No. 1370 EDA 2022 (Pa.Super. filed December 24, 2024) (unpublished memorandum). **See also** Pa.R.A.P. 126(b) (stating this Court may cite to and rely on for persuasive value unpublished decisions of this Court filed after May 1, 2019). In **Anderson**, the defendant was convicted under Section 6105 following a prior conviction for PWID. The defendant argued that there was no historical tradition supporting a *pro se* prohibition of firearm possession for persons convicted of certain offenses which do not pose a threat of physical violence. The Commonwealth relied primarily on **McIntyre I** to argue that the statute was not unconstitutional as applied to the defendant, and cursorily argued there was a link between drug trafficking and violence. This Court noted that **McIntyre I** was no longer controlling authority and vacated the
*(Footnote Continued Next Page)*

*Compare Farmer, supra*.  *See also Rahimi, supra*.  Given the recent developments in this area of the law, coupled with the lack of certainty regarding Appellant's criminal history in the record before us, the best resolution of this appeal is to vacate Appellant's judgment of sentence for persons not to possess firearms, and to remand for further proceedings, which may include an evidentiary hearing, for the court to supplement the record with Appellant's complete criminal history and consider the constitutionality of Section 6105 as applied to Appellant in light of *Rahimi* and its progeny.

Judgment of sentence affirmed in part, vacated in part.  Case remanded for further proceedings consistent with this memorandum.  Jurisdiction is relinquished.

President Judge Lazarus joins this memorandum.

Judge Bowes files a dissenting memorandum.

_____

Section 6105 conviction, noting that the Commonwealth had failed to address the appropriate benchmarks under *Bruen* and *Rahimi*.

*Anderson*, however, is distinguishable from this case because the defendant therein preserved and developed his arguments regarding the Commonwealth's failure to provide a historical analogue for disarming those convicted of nonviolent drug offenses; Appellant has not done so here. Further, as previously mentioned, the record before us does not confirm if Appellant has additional violent prior convictions which would be relevant to disposition of this issue.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/14/2025